## DIANE J. HALPERN vs. MICHAEL S. RABB.

No. 08-P-1072.

Middlesex. May 5, 2009. - September 30, 2009.

Present: BERRY, MILLS, & WOLOHOJIAN, JJ.

*Contempt. Divorce and Separation,* Child support. *Parent and Child,* Child support. *Judgment,* Interest. *Words,* "Earnings."

In child support proceedings in Probate and Family Court, the judge did not abuse her discretion in concluding that the father was not in contempt for his failure to include pass-through income from a Subchapter S corporation when calculating his support obligation under the parties' separation agreement, where the language of the agreement did not clearly and unequivocally encompass such income, which was reported on the father's tax returns but not actually received or realized by him [334-336]; however, this court remanded the matter for further findings with respect to whether the father had sustained his burden to demonstrate that further child support payments based on the Subchapter S corporation's earnings were not required [336-337].

No evidence appeared on the record of a child support proceeding to demonstrate that a corporation was a successor to a Subchapter S corporation owned by the father, such that the father was obligated to include its pass-through income as earnings for purposes of calculating his child support obligation under the parties' separation agreement. [337-338]

A probate judge, having found that a father was in contempt for failure to pay a portion of his child support obligation, correctly assessed interest, in accordance with G. L. c. 215, § 34A(*a*), from the date of the mother's filing of the contempt complaint through the date payment was made. [338-339]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 21, 1996.

A complaint for contempt, filed on August 26, 2005, was heard by *Judith Nelson Dilday,* J.

*Michael J. Traft* for the mother.

*Thomas J. Carey, Jr.,* for the father.

WOLOHOJIAN, J. Diane J. Halpern (mother) appeals from a contempt judgment entered against her former husband (father),

contending that the judge erred in determining the amounts owed by the father for child support. She presses three arguments. First, she contends that "pass-through" income of Acme Wholesale Business Trust (Acme) (a Subchapter S corporation owned by the father), reported on the father's tax returns, should have been included in the father's "income" for purposes of calculating his child support obligation under the parties' separation agreement; second, she argues that the father's income from Royal Foods (Royal), another company in which he owned an interest, should have been included in the same calculation because it is a successor to Acme; finally, she argues that the father owes interest from the date he committed a breach of the parties' separation agreement, rather than from the date the contempt complaint was filed.

*Background.* The parties divorced in 1998 after ten years of marriage. In relevant part, their separation agreement required the father to pay child support of $2,370 per month, plus "20% of his gross income from salary, bonuses, and earnings and interest from Acme Wholesale or its successor, between $150,000 and $250,000 per year."[1]

Acme is a domestic food brokerage company that buys and sells excess food stock, and the father was its sole shareholder. In 1999, because of pressure from a banking institution, Acme terminated its Subchapter S tax election in favor of Subchapter C tax status. In 2002, the company re-elected Subchapter S status in order to avoid the double taxation inherent in Subchapter C status. The father was also a part owner in Royal, a Subchapter S corporation that imports food from overseas. When Acme held Subchapter C status, its net income was reported on its own tax returns, not on the father's. During the period when Acme was a Subchapter S corporation, the father reported Acme's pass-through income on his personal income tax returns, on which he also reported Royal's income of the same sort.[2] The judge

---

[1]The judgments of divorce nisi ordered the parties to comply with the separation agreement and provided that the agreement was to survive with independent legal significance, "except for provisions relating to the minor children," which merged into the judgments. The separation agreement contained similar language with respect to merger.

[2]"Under Federal and State tax law, the earnings of [a Subchapter S corporation] are treated as having been 'passed through' to their shareholders . . .

found that the father did not realize Acme's pass-through income and that the income was never deposited into any account of the father. The judge also found there was no credible evidence that the father received Acme's income for personal use.

On August 26, 2005, the mother filed a complaint for contempt, alleging, among other things, that the father had failed to include Acme's and Royal's (as Acme's successor) pass-through income when calculating his child support payment obligation. Approximately one month later, the father paid the mother $22,161.60, which represented twenty percent of the wages, bonuses, and interest over $150,000 that the father had received from Acme between 1999 and 2004. He refused, however, to pay any amount based on Acme's or Royal's pass-through income.

After an evidentiary hearing, the probate judge found the father in contempt for failing to pay the amount owed on wages, bonuses, and interest over $150,000 he had received from Acme, exclusive of pass-through income. As a result, the judge concluded that the father owed $22,161 (the amount referenced above, rounded off, which the father had already paid), together with interest from the date the contempt complaint had been filed, and attorney's fees. See G. L. c. 215, § 34A. The father does not appeal.[3] As to the mother's claim for child support payments based on Acme's and Royal's pass-through income, the judge concluded that the separation agreement was ambiguous as to whether pass-through income from Acme should be included in the calculation of child support payments. After the evidentiary hearing, she determined that Acme's pass-through income was not realized or received by the father and, therefore, should not be included in the child support calculation. Lastly, the judge determined that Royal was not Acme's successor. The mother appeals from these determinations and the calculation of interest.

(whether or not distributions were actually made), and those persons are responsible for the resulting tax obligations. See 26 U.S.C. §§ . . . 1361-1379; G. L. c. 62, [§] 17A." *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. 501, 558 (1997). *Maillet* v. *Maillet,* 64 Mass. App. Ct. 683, 684 n.2 (2005).

[3]Because the father had paid the amounts he owed before the contempt hearing convened on November 21, 2005, the judge erred in finding him in contempt. See *Cooper* v. *Cooper,* 62 Mass. App. Ct. 130, 143-144 (2004). Nonetheless, it was within the judge's discretion to assess the father for the wife's attorney's fees in the contempt action. *Id.* at 144. In any event, since the father did not appeal, any such claim is waived.

*Discussion.* 1. *Acme.* a. *Contempt determination — mother's burden of proof.* The mother argues that the judge erred in excluding Acme's pass-through income in the calculation of the father's child support obligations.

"The burden of proof in a contempt action is on the complainant to prove its case by a preponderance of the evidence." *Steeves* v. *Berit,* 64 Mass. App. Ct. 265, 271 (2005).[4] A finding of contempt requires "a clear and undoubted disobedience of a clear and unequivocal command." *Warren Gardens Hous. Coop.* v. *Clark,* 420 Mass. 699, 700 (1995).

We begin our analysis by examining the language of the agreement, which provides that the father is to pay $2,370 per month in child support, plus "20% of his gross income from salary, bonuses, and earnings and interest from Acme Wholesale or its successor, between $150,000 and $250,000 per year." For purposes of this provision, the father's "gross income" is defined as "salary," "bonuses," "earnings," and "interest" from Acme. There is no question that Acme's pass-through income is not "salary," "bonuses," or "interest," and the mother does not contend otherwise.[5]

What remains, then, is the question whether the judge abused her discretion[6] in concluding that the phrase "earnings . . . from Acme" did not clearly and unequivocally encompass Acme's pass-through income as reported on the father's tax returns. We examine in turn whether the income was "earnings" and whether it was "from" Acme.

The term "earnings" is undefined in the agreement and the mother has not pointed us to any authority to support her claim that the term must, as a matter of law, include a corporation's Subchapter S pass-through income simply because it is reported on its shareholder's tax returns.[7] To the contrary, a case-specific,

---

[4]We apply the standard in effect while this case was pending. The burden of proof has since changed. See *Birchall, petitioner,* 454 Mass. 837, 851-853 (2009).

[5]The mother conceded this point at oral argument.

[6]"Questions of law, including the judge's interpretation of the settlement agreement, are afforded plenary review . . . ; the judge's ultimate conclusion on the contempt finding is reviewed under the abuse of discretion standard." *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 443 (1997).

[7]Earnings can be defined as "[r]evenue gained from labor or services, from

factual inquiry is required. *J.S.* v. *C.C.*, 454 Mass. 652, 662 (2009). In related contexts, we have employed a fact-based approach in quantifying income or earnings when calculating child support. Thus, for example, we have held that a parent's "gross income for purposes of establishing a child support amount is not necessarily the equivalent of a parent's taxable income." *Whelan* v. *Whelan*, 74 Mass. App. Ct. 616, 625 (2009). Compare *Wooters* v. *Wooters*, 74 Mass. App. Ct. 839, 843 (2009). To the same effect are the recently amended Child Support Guidelines, which, although not in effect at the time of the decision in the instant matter, are nevertheless instructive:

> "Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership or closely-held corporation, is defined as gross receipts minus ordinary and necessary expenses required to produce income. In general, income and expenses from self-employment or operation of a business should be carefully reviewed to determine the appropriate level of gross income available to the parent to satisfy a child support obligation. *In many cases this amount will differ from a determination of business income for tax purposes*" (emphasis supplied).

Child Support Guidelines § I.C (effective January 1, 2009). See *J.S.* v. *C.C.*, *supra* at 661 n.13.

In order to determine whether corporate earnings should be included in a parent's income for purposes of calculating child support and, if so, to what extent, a judge should examine whether the corporation's earnings are available to the parent for child support purposes. *Id.* at 663. A number of factors are to be considered, including the shareholder's level of control over corporate distributions (as measured by the shareholder's ownership interest), the legitimate business interests justifying retention of corporate earnings, and whether there has been any attempt to shield income as retained earnings. *Id.* at 663-664.

The question whether the earnings are "from" Acme is similarly fact-based. The agreement speaks of earnings *from* Acme, not earnings *of* Acme. Thus, the agreement does not require that

the investment of capital, or from assets." Black's Law Dictionary 548 (8th ed. 2004).

twenty percent of *Acme's* earnings in excess of $150,000 be included in the calculation of child support; rather, twenty percent of the *father's* earnings from Acme is to be used. This reading is supported by the remainder of the phrase, which refers to salary, bonuses, and interest — all of which can only be grammatically and logically understood to refer to monies received by the father from Acme. To determine whether the earnings are "from" Acme requires looking beyond the father's tax returns in order to determine whether the father received or realized the funds in some appreciable way.

In light of the above, we are of the view that a reasonable person would not necessarily conclude that the phrase "earnings . . . from Acme" includes Subchapter S pass-through income that was reported on the father's tax returns, but not actually received or realized by him. Absent a clear and unequivocal obligation, the mother's claim fails because, in the context of a contempt proceeding, "[a]mbiguities are regularly resolved in favor of the alleged contemnor, . . . and cannot be removed by examining the evidence underlying the judgment in which the ambiguous language is found." *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 772 (2002). Accordingly, the judge's implicit conclusion that the father was not in contempt for not paying an additional increment of child support based on the pass-through income was not an abuse of her discretion.

b. *Father's burden of proof.* Outside the contempt context, the burden of proof is on the father, as Acme's sole shareholder, regarding "treatment of [Acme's] undistributed earnings for purposes of determining income available for child support." *J.S.* v. *C.C.*, 454 Mass. at 664. See *id.* at 663 ("A majority shareholder may be relatively more likely to have access to retained funds and ability to manipulate pass-through income, and a sole shareholder even more so"). Although we have concluded that the parties' agreement is sufficiently ambiguous that contempt cannot lie, it was open to the judge to determine that the father did not carry his burden of proof in demonstrating that further payments based on Acme's earnings were not required. See, e.g., *Wooters* v. *Wooters*, 74 Mass. App. Ct. at 844 (husband was properly ordered to make further payments from proceeds of stock options, but should not have been held in contempt).

The judge found that "it is likely that the entire distribution

from Acme is *not* diverted to the taxing authorities [emphasis original]. The excess net income from Acme is *most likely* used in the ordinary practice of brokering large amounts of food [emphasis supplied]." She further found that, "[i]f the father were to 'realize' Acme's net income, and take that money for himself, then the corporation would be forced to borrow more money from lending institutions, *which would not be healthy for growing the business*" (emphasis supplied).

In *J.S.* v. *C.C.*, 454 Mass. at 663 n. 15, the court stated, "Not all legitimate business interests will justify excluding retained earnings from a shareholder's income. A corporation may reasonably choose to retain income for at least two distinct purposes: maintaining the current business, or investing in and expanding the business. Earnings retained in order to maintain the business as currently operated should not be included in gross income. . . . Earnings retained in order to expand the business, on the other hand, have the potential of increasing the business's value and thus the shareholder's personal net worth, and might properly be viewed as income available for child support — just as a distribution invested in another corporation would be."

We conclude that the judge's findings in the instant matter are not entirely consistent with the analysis required by *J.S.* v. *C.C.* with respect to whether the father sustained his burden to demonstrate that none of Acme's retained earnings should be viewed as income available for child support under the agreement. A remand for further fact finding on this point consistent with *J.S.* v. *C.C.* is necessary.

2. *Royal.* The mother argues that Royal is a successor to Acme and, hence, that the father was obligated to include its pass-through income as "earnings" for purposes of calculating his child support obligation under the separation agreement. A successor has been defined as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary 1473 (8th ed. 2004).

Here, there is no evidence to show that Royal combined with Acme or otherwise acquired any assets, interests, or obligations from Acme. Contrast *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 360-362 (1997) (deeming corporation successor

under de facto merger doctrine where, inter alia, it acquired substantially all of predecessor corporation's assets); *Milliken & Co.* v. *Duro Textiles, LLC,* 451 Mass. 547, 554, 559 (2008) (imposing successor liability where corporation purchased all of predecessor corporation's non-real estate assets in foreclosure sale in effort to shed debt obligation). Indeed, the record contains no information about Royal other than that it is in the business of importing food, that it was created after the parties were divorced, and that the father has an ownership interest in it. This was insufficient to prove that Royal was Acme's successor. In addition, Acme had not been dissolved, and there is no indication that Acme ceased its operations or liquidated its assets. Contrast *id.* at 559.

3. *Interest on arrearage.* As noted above, shortly after the contempt complaint was filed, the father paid the mother approximately $22,161 in child support, which he acknowledged should have been previously paid. The judge found that the father was in contempt as to this amount and assessed interest from the date of the filing of the contempt complaint through the date the payment was made.[8] The mother argues that interest should instead have been assessed from the date of breach. We disagree.

General Laws c. 215, § 34A(*a*), as amended by St. 2005, c. 163, § 51, provides that "[a]ny monetary contempt judgment shall carry with it interest, from the date of filing the complaint." The mother contends, however, that interest in this case should be governed by G. L. c. 231, § 6C, as amended through St. 1982, c. 183, § 3, which imposes interest in "all actions based on contractual obligations . . . from the date of the breach or demand."

The mother sought relief by filing a contempt complaint alleging that the father had failed to comply with his obligations under the judgments of divorce nisi. Although her complaint also alleged that the father had not complied with the separation agreement, her claim was one for contempt, not breach of contract. Indeed, she could not have maintained an action for breach of the separation agreement's child support provisions

---

[8]See note 3, *supra.*

because those provisions merged into the judgments. "[T]he merger of an agreement in a judgment is a substitution of the rights and duties under the agreement for those established by the judgment or decree." *Bercume* v. *Bercume*, 428 Mass. 635, 641 (1999). "An agreement cannot both lose its legal identity and retain legal significance independent of a judgment." *Ibid.* For these reasons, any interest owed would properly be assessed pursuant to G. L. c. 215, § 34A(*a*).[9]

*Conclusion.* The judgment dated February 28, 2006, is vacated to the extent that it determined that the father owed no more than $22,161 in additional child support, and the matter is remanded for further fact finding as to whether any portion of Acme's Subchapter S retained earnings should be deemed available for child support. The judgment is otherwise affirmed.

*So ordered.*

---

[9]The mother's request for appellate attorney's fees is denied.