SUPERIOR COURT 
 
 LUCAS NOBLE and AMANDA NOBLE vs. JESSICA CROVETTI

 
 Docket:
 2477CV00476
 
 
 Dates:
 August 14, 2024
 
 
 Present:
 Jeffrey T. Karp
 
 
 County:
 ESSEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS’ MOTION FOR REAL ESTATE ATTACHMENT (Paper No. 4) and DEFENDANT’S MOTION TO DISMISS (PAPER No. 5)
 
 

             This action came before the Court on August 6, 2024, for a hearing on the Plaintiffs’ Motion For Real Estate Attachment (Paper No. 4) (“Motion For Attachment”) and the Defendant’s Motion To Dismiss (Paper No. 5) (“Motion To Dismiss”), seeking the dismissal of the plaintiffs’ Verified Complaint (Paper No. 1) under Mass. R. Civ. P. 12(b)(6).
            Plaintiff Lucas Noble (“Lucas”)[1] and defendant Jessica Crovetti (“Crovetti”) were previously married and have two minor daughters. They were divorced in 2018 and are presently the parties in post-divorce judgment proceedings pending in the Essex Probate and Family Court (Docket No. ES16D0052DR) (“PFC” and “PFC Action”).
            In the Complaint, Lucas and his current spouse, plaintiff Amanda Noble (“Amanda”), allege that Crovetti slandered and libeled them to, inter alia, staff at the daughters’ school, residents of their town, the children’s therapist, and the guardian-ad- litem (“GAL”) appointed by the PFC in the PFC Action.
 
--------------------------------------------
 
[1] The Court will refer to the plaintiffs by their first names because they share a surname.
 
                                                            -1-
 
            Lucas and Amanda further allege that Crovetti’s conduct in making the alleged defamatory statements breached two agreements between them (i.e., a Separation Agreement and a document titled “Release of All Claims”). The Complaint sets forth the following causes of action: breach of contract (Count I), defamation per se (Count II), defamation (Count III), intentional and negligent infliction of emotional distress (Count IV), and abuse of process (Count V).
            As is fully explained below, the Motion For Attachment is DENIED because the plaintiffs failed to demonstrate that there is a reasonable likelihood they will recover judgment of at least $139,596.00 for legal fees and costs they incurred in the PFC Action due to Crovetti’s alleged breach of the contracts and alleged tortious conduct.
            Further, as is also fully explained below, the Motion To Dismiss is ALLOWED in part and DENIED in part.
 
                                                            -2-
 
BACKGROUND
            Accepting the factual allegations asserted in the Complaint as true, the plaintiffs allege the following in the Complaint.[2], [3]
The PFC Action
            On January 8, 2016, Crovetti instituted the PFC Action by filing a Complaint for Divorce in the PFC against Lucas.
            On May 5, 2016, Crovetti obtained an ex parte restraining order in the Salem District Court against Lucas, alleging that Lucas had sexually abused their then-five- year old daughter. On July 19, 2016, after a hearing, that court terminated the restraining order.
            In the meantime, according to the Complaint, Crovetti reported the alleged sexual abuse to the Department of Children and Families (“DCF”), which investigated the allegations and “dismissed [the allegations] for lack of evidence or support,” as did the Essex District Attorney’s Office (Complaint, ¶¶ 12, 18).
            The parties’ divorce proceedings, which were highly contentious and heavily litigated,[4] concluded on June 4, 2018, after Lucas and Crovetti entered into (and filed) the SA (Ex. B), which was approved by the PFC during a hearing.
 
--------------------------------------------
 
[2] Additional allegations in the Complaint are discussed, infra, in the Court’s Discussion section.
[3] In deciding the Motion To Dismiss, the Court has considered information within the four corners of the Complaint and the following exhibits attached to the Complaint: Memorandum of Decision in the 2017 Action (hereinafter defined) (Ex. A), Separation Agreement (Ex. B) (“SA”), and Release Of All Claims (Ex. C) (“Release”). The Court has also considered the docket entries in the PFC Action and the 2017 Action. See Rosenberg v. JPMorgan Chase & Co., 487 Mass. 40, 408 (2021) (“‘[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, [] may be taken into account [in deciding a motion to dismiss under Rule 12(b)(6)]’”) (quotation and citations omitted).
[4] That the divorce proceedings were “heavily litigated” is an understatement. According to the docket entries in the PFC Action, there were 347 pleadings, motions, reports, orders, and
 
                                                            -3-
 
Paragraph 13 of the SA states the following:
13. EFFECT OF AGREEMENT: The Husband and the Wife each agree that at any hearing on the Complaint for Divorce, a copy of this Agreement shall be submitted to the Court and may be incorporated in the Judgment of Divorce. Notwithstanding such incorporation, all matters relating to the children, including child support, health insurance, educational expenses, and extracurricular activities shall be merged into the Court Order and be modifiable by agreement of the Parties or further Order/Judgment of a Court with appropriate jurisdiction. All other matters relating to alimony and property division including real estate, retirement accounts, pensions, personal property, and the like shall survive and maintain independent legal significance and be forever binding upon the Parties.
The purposes of this subsection are: (1) to protect each Party against any attempt by the other Party to vary the terms of this Agreement after the entry of a final judgment of divorce with respect to distribution of property pursuant to G.L. c. 208, § 34 and the distribution of liabilities; (2) to enable the Husband and the Wife to procure an enforcement of the terms of this Agreement incorporated in a Judgment of Divorce in the Essex Probate and Family Court as a binding contract in any Court with jurisdiction over the person or property of the other Party.
Complaint, Ex. B, SA at p.9, ¶ 13 (original emphasis) (“Merger Clause”).
            Accordingly, Judgment of Divorce Nisi entered on June 4, 2018, in the PFC Action, and Judgment of Divorce Absolute entered on September 4, 2018 (collectively, “Divorce Judgment”).
The 2017 Action
            On June 21, 2017, while the divorce proceedings in the PFC Action were pending, Lucas filed a civil complaint against Crovetti in the Essex Superior Court. See Docket No. 1777CV00914 (“2017 Action”). He alleged, inter alia, that Crovetti made defamatory statements to third parties that Lucas sexually abused one of their
 
--------------------------------------------
 
events entered in the PFC Action during the two and one-half years between Crovetti’s filing of the Complaint for Divorce on January 8, 2016, and the entry of Judgment of Divorce Nisi on June 4, 2018.
 
                                                            -4-
 
daughters. In the complaint in the 2017 Action, Lucas alleged that Crovetti committed defamation, abuse of process, and intentional infliction of emotional distress against him.
            On May 22, 2018, Crovetti executed the Release (Complaint, Ex. C) and, according to the docket entries, the 2017 Action was ultimately dismissed by agreement of the parties in October 2018.
Post-Divorce Judgment Proceedings In The PFC Action
On October 21, 2018, Lucas and Amanda were married. 
            According to the docket entries in the PFC Action:
• On May 7, 2021, Lucas filed a Complaint for Contempt in the PFC Action, which he voluntarily dismissed on September 24, 2021.
• On August 17, 2022, Lucas filed a Complaint for Modification in the PFC Action regarding the custody of the children. See also Complaint, ¶ 39.
• On September 26, 2022, Crovetti filed an answer and counterclaim regarding the Complaint for Modification and the litigation proceeded with the filing of numerous contested motions.
• On September 12, 2023, the PFC appointed attorney Karen Watts Stunz as a GAL in the PFC Action.[5]
            On January 2, 2024, Crovetti filed an emergency motion to suspend Lucas’ parenting time (“Emergency Motion”) in the PFC Action, and an affidavit in support thereof wherein she averred that Lucas, inter alia, “abused animals, forces kids to watch animals being slaughtered, . . . takes [one of the children] on rides alone, quizzes her, and yells at her frequently.” Complaint, ¶ 58 (“Emergency Affidavit”).
 
--------------------------------------------
 
[5] The record before the Court does not identify the topics about which the GAL was appointed to investigate and report.
 
                                                            -5-
 
Then, according to the docket entries in the PFC Action:
• On January 16, 2024, the PFC granted Lucas’ motion for an appointment of a parenting supervisor to supervise the exchange of the children for parenting time.
• On June 13, 2024, the GAL filed her report in the PFC Action.[6]
            The post-Divorce Judgment proceedings in the PFC Action, which have been highly contentious and heavily litigated, are ongoing.[7], [8]
DISCUSSION
            Because in deciding the merits of the Motion For Attachment, the Court must determine, inter alia, whether there is a reasonable likelihood that the plaintiffs will recover a judgment in this action, the Court will first address the merits of the Motion To Dismiss.
 
--------------------------------------------
 
[6] The plaintiffs filed the Complaint in this matter on May 15, 2024, approximately one month before the GAL filed her report in the PFC Action. In the Complaint, the plaintiffs quote purported defamatory statements Crovetti made to the GAL on November 7, 2023, without citing the source of the statements. Complaint, ¶ 47. Nevertheless, the allegations in the Complaint are “accepted as true” for purposes of deciding the Motion To Dismiss. Fraelick v. PerkettPR,
Inc., 83 Mass. App. Ct. 698, 700 (2013).
[7] According to the docket entries in the PFC Action, there were 223 pleadings, motions, reports, orders, and events entered in the PFC Action, thus far, during the post-judgment proceedings.
[8] At the hearing before this Court, the attorneys reported that the trial of the PFC Action, which will take several trial days, began recently and is not scheduled to conclude for a few months.
 
                                                            -6-
 
I. THE MOTION TO DISMISS MUST BE ALLOWED AS TO CERTAIN ALLEGATIONS REGARDING THE CLAIM FOR BREACH OF THE SA IN COUNT I AND COUNT IV OF THE COMPLAINT, AND IT MUST BE OTHERWISE DENIED
A. Standard Of Review
            The standard applicable to motions to dismiss brought under Rule 12(b)(6) is well known. “What is required at the pleading stage are factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief, in order to reflect[] the threshold requirement of [Rule] 8(a)(2) that the ‘plain statement’ possess enough heft to ‘sho[w] that the pleader is entitled to relief.’” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (citations omitted). Thus, in deciding a motion to dismiss, the Court must “consider whether the factual allegations in the complaint are sufficient, as a matter of law, to state a recognized cause of action or claim, and whether such allegations plausibly suggest an entitlement to relief.” Town of Dartmouth v. Greater New Bedford Reg’l Voc. Tech. High Sch. Dist., 461 Mass. 366, 374 (2012). When doing
so, the Court must accept the factual allegations asserted in the Complaint “even if doubtful in fact,” as well as inferences that are reasonably drawn from the allegations, in favor of the nonmoving party. Iannacchino, 451 Mass. at 625 n.7.
            At bottom, a motion to dismiss will be allowed “when the complaint’s factual allegations (and reasonable inferences therefrom), accepted as true, do not plausibly suggest an entitlement to relief.” Fraelick, 83 Mass. App. Ct. at 699 - 700.
            With these principles in mind, the Court will address the merits of the Motion To Dismiss.
 
                                                            -7-
 
B. So Much Of Count I Of The Complaint That Alleges That Crovetti Violated Provisions In The SA “Relating To The Children” Fail As A Matter of Law And Must Be Dismissed Because Said Provisions Merged With The Divorce Judgment And Retained No Independent Legal Significance
            Generally speaking, in Count I of the Complaint, Lucas alleges that Crovetti breached the SA and Amber alleges that Crovetti breached the Release.9 However, in the Motion To Dismiss, Crovetti does not request the dismissal of so much of Count I that alleges that Crovetti breached the Release. Thus, the Court will confine its analysis to Lucas’ claim in Count I that Crovetti breached the SA.
            In Count I, Lucas alleges that Crovetti breached the SA by committing ten specific acts, which are enumerated at ¶¶ 68(a) – (j) of the Complaint, and which the Court summarizes as follows:
(I) making defamatory statements to “third parties” about Lucas (Complaint, ¶¶ 68(a), 68(b));
(ii) “disparaging” Lucas to the children’s medical and mental health providers (Complaint, ¶ 68(c));
(iii) “prejudic[ing] medical, psychological, and educational caregivers of the minor children against [Lucas]” (Complaint, ¶ 68(d));
(iv) “disparag[ing]” Lucas to the children (Complaint, ¶ 68(e));
(v) making medical, educational, and “major life” decisions about the children without consulting Lucas (Complaint, ¶¶ 68(f), 68(g), 68(h));
(vi) “instruct[ing] the minor children to lie to [Lucas]” (Complaint, ¶ 68(I)); and,
(vii) violating the provisions in Exhibit A of Separation Agreement regarding joint legal custody of the children (Complaint, ¶ 68(j)).
 
--------------------------------------------
 
[9] To be clear, Amber is not a party to the SA and Lucas is not a party to the Release.
 
                                                            -8-
 
            In the Motion To Dismiss, Crovetti argues that all of the aforementioned alleged violations of the SA enumerated in Count I pertain to the children and were, according to the Merger Clause, incorporated into, and merged into, the Divorce Judgment. Thus, according to Crovetti, any breach of the SA “related to the children” did not survive entry of the Divorce Judgment as an independent contract and cannot be the subject of an action for breach of contract.
            For his part, as best as the Court can understand from the plaintiffs’ opposition, Lucas argues that the following unspecified provisions in the SA “do[] not address issues with the children,” and thus did not merge into the Divorce Judgment pursuant to the Merger Clause:
[T]hey [(Lucas and Crovetti)] contracted not to disparage the other party to the minor children; not to alienate one parent from the children in words or actions; not to prejudice caregivers of the minor children; and [Lucas and Crovetti] resolved the [2017 Action] within the body of the [SA].
Plaintiffs’ Opposition, Paper No. 5.2.[10]
With respect to the Merger Clause, Lucas further argues that:
The legal custody provisions and the portions of the [SA] describing the rights and obligations of the parties as to parenting the children in relation to how they treat, communicate with, and inform the other parent were [] intended to survive the judgment [(i.e., were not intended to merge into the Divorce Judgment)].
Plaintiffs’ Opposition, Paper No. 5.2 (emphasis added).
 
--------------------------------------------
 
[10] Lucas’ arguments in the plaintiffs’ opposition memorandum (Paper No. 5.2) regarding the merits of his claim for breach of the SA in Count I are confusing and difficult for the Court to decipher. Adding to the Court’s difficulty are Lucas’ vague references, in both the Complaint and the plaintiffs’ opposition, to violations of the SA, without quoting or even citing particular provisions of the SA that Crovetti allegedly breached (e.g., that Lucas and Crovetti agreed “not to disparage the other party to the minor children”). Further, the plaintiffs’ failure to include page numbers in their opposition memorandum that the Court can cite in this Decision has contributed to making the Court’s task here unnecessarily cumbersome.
 
                                                            -9-
 
            Thus, as best as the Court can tell, Lucas argues that when executing the SA, he and Crovetti did not intend that any matters other than the “legal custody provisions” and parenting-related provisions in the SA would merge into the Divorce Judgment. However, no matter what Lucas and Crovetti purportedly “intended” in the Merger Clause, “[w]here the language is clear [in a separation agreement], it determines the agreement’s . . . meaning.” Cavanagh v. Cavanagh, 490 Mass. 398, 413 (2022) (quotation and citations omitted).[11]
            Here, the language in the Merger Clause is not ambiguous; rather, it clearly reflects that: (1) the SA was incorporated into the Divorce Judgment; (2) “[n]otwithstanding such incorporation, all matters relating to the children . . . [were] merged into the [Divorce Judgment]”; and, (3) all other matters not “relating to the children” survived the Divorce Judgment and, as the Court discusses next, maintain independent legal significance (and may be the basis for a claim for breach of the SA).
            It has long been the law in Massachusetts that “where the parties’ separation agreement was merged into the judgment of divorce, ‘it retains no independent legal significance apart from the judgment.’” Id. at 413 (citations omitted). Thus, provisions in a separation agreement that merge into the judgment of divorce do not survive the judgment, “lose[] all independent legal significance[,]” and “[n]o action for breach of the separation agreement may be maintained.” I d. at 429; see also Cournoyer v. Cournoyer, 40 Mass. App. Ct.
 
--------------------------------------------
 
[11] Stated differently, when interpreting the Merger Clause, the Court may “consider extrinsic evidence of the parties’ . . . intent [only] where the language is ambiguous.” Id.
 
                                                            -10-
 
302, 305 (1996) (explaining that “‘if an agreement does not survive a judgment of divorce, that is, if it is merged in the judgment . . ., the agreement loses its identity; it retains no independent legal significance apart from the judgment.’ . . . However, if a . . . separation agreement . . . is incorporated in a divorce judgment, but survives the judgment, the agreement retains its force as an independent contract.”) (citation omitted) (emphasis added).
            The case of Halpern v. Rabb, 75 Mass. App. Ct. 331 (2009), is instructive on the issue of merger. In that case, the former wife (i.e., “the mother”) brought a post-divorce judgment action for contempt, arguing that, inter alia, the former husband (i.e., “the father”) failed to include certain “‘income’ for purposes of calculating his child support obligation under the parties’ separation agreement.” Id. at 331.
            The separation agreement in Halpern, like the Merger Clause here, “provided that [it] was to survive with independent legal significance, ‘except for provisions relating to the minor children,’ which merged into the judgments.” Id. at 332, n.1 (emphasis added).
            In rejecting the mother’s argument that interest on the contempt judgment against the father should have run from the date he “breached” the separation agreement, the Appeals Court in Halpern stated the following:
The mother sought relief by filing a contempt complaint alleging that the father had failed to comply with his obligations under the judgments of divorce nisi. Although her complaint also alleged that the father had not complied with the separation agreement, her claim was one for contempt, not breach of contract. Indeed, she could not have maintained an action for breach of the separation agreement’s child support provisions because those provisions merged into the judgments.
Id. at 338 – 339 (emphasis added).
 
                                                            -11-
 
            Here, the Merger Clause, like in Halpern, clearly states that “all matters relating to the children . . . shall be merged into the [Divorce Judgment].” Complaint, Ex. B., SA at ¶ 13, p. 9 (emphasis added). Thus, the alleged breach of any provisions in the SA that “relate to the children” merged into the Divorce Judgment and “los[t] all independent legal significance. . . [and n]o action for breach of the[se provisions in the] separation agreement may be maintained.” Cavanagh, 490 Mass. at 429. Stated differently, as to Lucas’ claim in Count I that Crovetti breached the SA, only alleged breaches of provisions in the SA that do not “relate to the children” are actionable.
            Based on these legal principles, the Court has little difficulty ruling that the following alleged violations of the SA are “matters relating to the children” that merged into the Divorce Judgement pursuant to the Merger Clause and, accordingly, are not actionable breaches of contract in this case:
1. Complaint, ¶ 68(c) – that Crovetti disparaged Lucas to the children’s medical and mental health providers;
2. Complaint, ¶ 68(d) – that Crovetti “prejudiced medical, psychological, and educational caregivers of the minor children against [Lucas]”;
3. Complaint, ¶ 68(e) – that Crovetti “disparaged” Lucas to the children;
4. Complaint, ¶¶ 68(f), 68(g), 68(h) – that Crovetti made medical, educational, and “major life” decisions about the children without consulting Lucas;
5. Complaint, ¶ 68(I) – that Crovetti “instructed the minor children to lie to [Lucas]”; and,
6. Complaint, ¶ 68(j) – that Crovetti violated the provisions in Exhibit A of the SA regarding joint legal custody of the children.
 
                                                            -12-
 
            In sum, the Court rules that, as a matter of law, the Merger Clause in the SA bars Lucas from bringing any claims for violations of the provisions in the SA “relating to the children,” i.e., the alleged violations of the SA described in the Complaint at ¶¶ 68(c), 68(d), 68(e), 68(f), 68(g), 68(h), 68(I), and 68(j); thus, those claims must be dismissed. However, the Court further rules that the alleged violations of the SA described in the Complaint at ¶¶ 68(a) – (b) do not “relate to the children” and, thus, they are actionable breaches of the SA.
            Accordingly, the Motion To Dismiss is ALLOWED as to so much of Count I of the Complaint that alleges that Crovetti violated provisions in the SA “relating to the children,” including the violations alleged in the Complaint at ¶¶ 68(c), 68(d), 68(e), 68(f), 68(g), 68(h), 68(I), and 68(j). The Motion To Dismiss is DENIED as to the claims for breach of the SA alleged in ¶¶ 68(a) and 68(b) of Count I.[12]
C. The Complaint Plausibly Suggests An Entitlement To Relief On The Plaintiffs’ Claims For Defamation Per Se (Count II) And Defamation (Count III)
            The Court will next address the sufficiency of Count II of the Complaint, alleging that Crovetti committed defamation “per se,” and Count III, alleging that Crovetti committed defamation.
            The elements of a claim for defamation are “that ‘(a) [t]he defendant made a statement, concerning the plaintiff, to a third party … [;] (b) [t]he statement could damage the plaintiff’s reputation in the community … [;] (c) [t]he defendant was at fault
 
--------------------------------------------
 
[12] To be clear, what remains of Count I of the Complaint are that: (I) Crovetti breached the SA by committing the conduct alleged at ¶¶ 68(a) and 68(b) of the Complaint (i.e., that Crovetti breached the SA “by publishing [defamatory] false statements to third parties about [them]”); and, (ii) Crovetti breached the Release by committing the conduct alleged at ¶¶ 68(a) – 68(j). See n.9, supra.
 
                                                            -13-
 
in making the statement … [; and] (d) [t]he statement either caused the plaintiff economic loss … or is actionable without proof of economic loss.’” Butcher v. University of Massachusetts, 483 Mass. 742, 747 (2020) (citations omitted).
            A claim for defamation per se “is actionable without proof of economic loss.” Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003) (citations omitted). “Four types of statements are actionable without proof of economic loss: statements that constitute libel, . . . statements that charge the plaintiff with a crime, statements that allege that the plaintiff has certain diseases, and statements that may prejudice the plaintiff’s profession or business.” Id. (citations omitted); see e.g. Phelan v. May Dep’t Stores Co., 443 Mass. 52, 56 (2004) (ruling false statement accusing a person of committing a crime is “defamatory per se, requiring no proof of special damages.”); Waters v. Kearney, 2024 Mass. App. Unpub. LEXIS 343, *4; 104 Mass. App. Ct. 1108 (2024) (“A statement accusing a person of a crime constitutes defamation per se While a plaintiff alleging libel must show economic damages, defamation per se does not require proof of economic loss.”) (citations omitted). Here, the plaintiffs allege in Count II that Crovetti committed defamation per se by “publicizing false statements meant to prejudice the plaintiffs[’] personal and professional reputations,” Complaint, ¶ 85, and by falsely stating that Lucas committed a crime. Complaint, ¶ 86.
 
                                                            -14-
 
            In Counts II and III of the Complaint, the plaintiffs claim that Crovetti allegedly made (the same) twenty specific false statements, which are enumerated at ¶¶ 83(a) – 83(t) (Count II) and at ¶¶ 99(a) – 99(t) (Count III).
            Crovetti argues that Counts II and III must be dismissed for two reasons. First, with respect to statements she allegedly made to the GAL on November 7, 2023, which are set forth in ¶ 47 of the Complaint, Crovetti argues that the statements are not defamatory as a matter of law because the statements are “speculative,” nonactionable statements of “opinion,” and because the GAL “cannot [and did not] disseminate [the GAL] report to [the public].”
            However, the Court rejects Crovetti’s first argument because it is woefully deficient, conclusory, and lacking in citation to the law. It is Crovetti’s burden, as the moving party, to present legal authority in support of her argument. See Superior Court Rule 9A(a)(1) (“A moving party must serve with the motion, . . . (1) a separate memorandum stating the reasons, including supporting authorities, that the motion should be granted            ”) (emphasis added). Here, Crovetti has failed to carry that
burden.
            In her second argument regarding the sufficiency of Counts II and III, Crovetti cites the case of Sullivan v. Birmingham, 11 Mass. App. Ct. 359 (1981), and others, for
the proposition that she “has absolute immunity” for statements made “while a judicial proceeding [was] active.” See Paper No. 5.1, pp. 11 – 12.
            “The doctrine of absolute privilege applies to defamatory statements made ‘in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.’” Sullivan, 11 Mass. App. Ct. at 361 (quoting Sriberg v.
 
                                                            -15-
 
Raymond, 370 Mass. 105, 109 (1976)). To be sure, this “absolute privilege,” which is commonly referred to as “[t]he litigation privilege, ‘generally precludes civil liability based on statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding, as well as statements preliminary to litigation that relate to the contemplated proceeding.’” Haverhill Stem LLC v. Jennings, 99 Mass. App. Ct. 626, 636 (2021) (citations omitted).[13]
            Nevertheless, Crovetti’s argument that the litigation privilege requires the dismissal of Counts II and III is overstated and misplaced. The litigation privilege “basically is a defense to suit,” The Patriot Grp., LLC v. Edmands, 96 Mass. App. Ct. 478, 483 (2019), for which “[t]he party asserting the litigation privilege bears the burden of showing that a particular communication is privileged.” Id. at 484. “A court determines whether the litigation privilege is applicable ‘on a case-by-case basis, after a fact- specific analysis, with a proper consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation.’” Bassichis v. Flores, 490 Mass. 143, 153 - 154 (2022) (citations omitted).
            Here, in deciding the Motion To Dismiss, as stated, the Court must accept the factual allegations asserted in the Complaint as true, “even if doubtful in fact.” Iannacchino, 451 Mass. at 625 n.7. Thus, at this stage of the proceedings, the Court is
 
--------------------------------------------
 
[13] In their opposition, the plaintiffs refer to Crovetti’s argument as an invocation of “judicial immunity,” which the Court understands is likely meant to refer to the doctrine of judicial estoppel. In either case, the plaintiffs’ argument is misplaced. “Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Blanchette v. School Comm., 427 Mass. 176, 184 (1998). Crovetti makes no such allegation here.
 
                                                            -16-
 
precluded from conducting the required “fact-specific analysis,” which must be decided on summary judgment or at trial.
            At bottom, Counts II and III of the Complaint “‘plausibly suggest[]’ . . . an entitlement to relief.” Id. at 636 (citation omitted). Therefore, the Motion To Dismiss as to Counts II and III of the Complaint is DENIED.
D. The Complaint Fails To Plausibly Suggest An Entitlement To Relief On The Plaintiffs’ Claim For Intentional And Negligent Infliction Of Emotional Distress (Count IV)
            The Court will next address the sufficiency of Count IV of the Complaint, which alleges that Crovetti committed intentional and negligent infliction of emotional distress.
            “To prevail on [a] claim [of intentional infliction of emotional distress], the plaintiff [must] show ‘(1) that the actor intended to inflict emotional distress or that [she] knew or should have known that emotional distress was the likely result of [her] conduct … ; (2) that the conduct was ‘extreme and outrageous,’ was ‘beyond all possible bounds of decency’ and was ‘utterly intolerable in a civilized community’ … ; (3) that the actions of the defendant were the cause of the plaintiff's distress … ; and (4) that the emotional distress sustained by the plaintiff was ‘severe.’” Butcher, 483 Mass. at 758 (citations omitted).
            “‘To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove: ‘(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.’” Shea v. Cameron, 92 Mass. App. Ct. 731, 739 (2018) (citations omitted).
 
                                                            -17-
 
            Here, even when accepted as true, as the Court must under Rule 12(b)(6), the allegations in the Complaint as to Count IV, specifically at ¶¶ 106 – 112 of the Complaint, fail as a matter of law because they are nothing more than “[t]hreadbare recitals of the legal elements, supported by mere conclusory statements, [which] do not suffice.” A shcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ruling that, under Rule 12(b)(6), a “formulaic recitation of the elements of a cause of action will not do.”); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (stating that, when ruling on a motion under Rule 12(b)(6), the court must disregard “legal conclusions cast in the form of factual allegations.”). For example, ¶ 106 of the Complaint states that “[a]t all relevant times, Crovetti knew, or should have known that bringing false claims against the plaintiffs would cause emotional distress.”
            Other than the “legal conclusions cast in the form of factual allegations” at ¶¶ 106 – 112, the Complaint fails to even mention that the plaintiffs suffered any emotional distress, never mind severe emotional distress (as needed for a claim of intentional infliction of emotional distress) or physical harm (as needed for a claim of negligent infliction of emotional distress).
            Therefore, the Motion To Dismiss as to Count IV of the Complaint is ALLOWED.[14]
 
--------------------------------------------
 
[14] To be sure, the plaintiffs did not address the sufficiency of Count IV of the Complaint at all in their opposition to the Motion To Dismiss.
 
                                                            -18-
 
E.  The Complaint Plausibly Suggests An Entitlement To Relief On The Plaintiffs’ Claim For Abuse Of Process (Count V)
            Count V of the Complaint alleges that Crovetti committed abuse of process. Once again, Crovetti argues that this claim should be dismissed because the allegations “are speculative at best.” She also argues facts outside the four corners of the Complaint and the exhibits thereto.[15] These arguments, like Crovetti’s aforementioned arguments concerning the sufficiency of Count II and III, are woefully deficient, conclusory, and lacking in citation to the law. Nevertheless, the Court will determine if the Complaint plausibly suggests a claim for abuse of process.
            “An abuse of process claim involves three elements: ‘[1] that process was used, [2] for an ulterior or illegitimate purpose, [3] resulting in damage.’” 477 Harrison Ave., LLC v. JACE Bos., LLC, 477 Mass. 162, 168 - 169 (2017) (quotations and citation omitted).
            Here, notwithstanding the failure to specifically identify the “process” at issue in the Complaint,[16] the allegations in the Complaint about the Emergency Motion and the content of the Emergency Affidavit (see ¶¶ 56 - 58) are sufficient, although just barely, for the Court to rule that Count V plausibly suggests an entitlement to relief.
            Therefore, the Motion To Dismiss as to Count V of the Complaint is DENIED.
 
--------------------------------------------
 
[15] For example, Crovetti argues, without pointing to any support in the record, “that two Justices in the Family and Probate Court have issued orders in regard[] to all of the allegations made by the plaintiff.”
[16] When asked by the Court at the hearing to identify what process is at issue in Count V, the plaintiffs’ counsel identified the Emergency Motion and the Emergency Affidavit Crovetti filed in the PFC Action in January 2024. See Complaint, ¶ 58.
 
                                                            -19-
 
III.  THE PLAINTIFFS’ MOTION FOR REAL ESTATE ATTACHMENT MUST BE DENIED
            The Court will next address the merits of the plaintiffs’ Motion For Attachment, wherein the plaintiffs seek an attachment of $139,596.00 on Crovetti’s home in Middleton. The plaintiffs filed two affidavits in support of the motion: Affidavit of Joseph M. Orlando, Jr., (“Orlando Affidavit”) and Affidavit of Lucas Noble (“Lucas Affidavit”). See Paper No. 4.2. Crovetti opposes the motion.
A. Standard Of Review
            The standard applicable to motions for attachments is well-known. An attachment “may be entered only after . . . a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.” Mass. R. Civ. P. 4.1(c). [17]
 
--------------------------------------------
 
[17] In her memorandum in opposition, Crovetti “opposes [p]laintiffs[’] request for a real estate attachment as a preliminary injunction.” S ee Paper No. 4.3, p.1 (emphasis added). And, she argues that the plaintiffs have failed to demonstrate “a likelihood of success on the merits,” i.e., an element required for the issuance of a preliminary injunction under Mass. R. Civ. P. 65, rather than the standard required for an attachment under Rule 4.1 (i.e., a reasonable likelihood to recover judgment for at least the amount of the attachment sought). See Abner A. v. Mass. Interscholastic Athletic Ass’n, 490 Mass. 538, 545 (2022) (“‘Among the factors the motion judge must consider to determine whether a preliminary injunction should issue, likelihood of success on the merits is especially important.’ . . . ‘[T]he preliminary injunction cannot survive if the plaintiffs are unlikely to succeed on the merits.’”) (citation omitted). Although the wording of the necessary element is somewhat similar, the Court is not convinced, and Crovetti has not cited any appellate decisions stating, that the likelihood of success element applicable under Rule 65 is relevant to this Court’s decision on the merits of the Motion For Attachment. Furthermore, the plaintiffs need not show irreparable harm to obtain an attachment under Rule 4.1, as argued by Crovetti.
 
                                                            -20-
 
B. The Plaintiffs Have Failed To Show A Reasonable Likelihood T hey Will Recover Judgment For The Amount And Type Of Damages Requested In The Motion For Attachment
            In the Motion For Attachment, the plaintiffs allege, somewhat vaguely and obliquely, that they are reasonably likely to recover $139,596.00 in “legal fees and costs” they have incurred as a result of Crovetti’s “continuous breaches” of the Release and the SA “since 2018 to the present,” which they allege “have driven up the cost of litigation in the Probate matter, due to the need to defend and discover them, costing the plaintiffs attorneys’ fees and costs.” See Paper No. 4.1.[18], [19]
            Thus, the narrow question for the Court’s determination on the Motion For Attachment after the Court’s above rulings on the Motion To Dismiss, is whether Lucas has established a reasonable likelihood that he will recover judgment of at least $139,596.00 for the legal fees and costs he has incurred thus far in the PFC Action on what remains of his breach of contract claim, that being: breach of provisions of the SA not relating to the children.
            “‘The usual rule for damages in a breach of contract case is that the injured party should be put in the position [he] would have been in had the contact been performed.’” Hlatky v. Steward Health Care System, LLC, 484 Mass. 566, 580 (2020) (citations omitted). This includes “[c]onsequential damages . . . [, which] encompass ‘all losses
 
--------------------------------------------
 
[18] Like in the Motion To Dismiss, the plaintiffs have failed to include pages numbers in their brief that the Court can cite in this Decision. See n.10, supra.
[19] The plaintiffs’ support for the “legal fees and costs” can be found in two places in the record before the Court. First, in the Lucas Affidavit, Lucas avers that he “ha[s] spent $139,596.00 in legal fees and costs due to the [d]efendant’s breach of our contracts entered into in 2018, and the [d]efendant’s continued defamatory published statements about myself and Amanda Noble.” Paper No. 4.2. Second, in the Orlando Affidavit, attorney Orlando avers that “[t]he plaintiffs have documented legal fees and costs in the amount of $139,596.00.” Id.
 
                                                            -21-
 
which were the foreseeable consequences of the defendant’s [breach].’” H1 Lincoln, Inc. v. S. Wash. St., LLC, 489 Mass. 1, 22 (2022) (citations omitted).
            Notwithstanding the broad nature of damages that are recoverable in an action for breach of contract, based on the limited record before it, the Court must rule that Lucas has failed to demonstrate a reasonable likelihood that he will recover judgment for his “legal fees and costs” of $139,596.00 that he incurred thus far in the PFC Action on what remains of his claim for breach of the nonchildren-related provisions in the SA because, for the reasons stated above in § I(B), supra, Lucas is unlikely to be entitled to recover in this action for legal fees and costs that he has incurred relating to Crovetti’s alleged violations of provisions in the SA “relating to the children.” To be sure, even a quick perusal of the docket entries in the PFC Action reflects that the ongoing litigation concerns mainly, if not solely, provisions in the SA “relating to the children.”[20]
            Therefore, the Motion For Attachment must be DENIED.
 
--------------------------------------------
 
[20] To be clear, the plaintiffs’ do not argue in the Motion For Attachment that they are likely to recover damages on any of their other remaining claims. Further, there is no information before the Court, other than some passing references in the Complaint that are nothing more than labels and conclusions, regarding the extent (and whether) they have suffered emotional distress, harm to their reputation, the extent of such suffering, or other consequential or special damages stemming from Crovetti’s alleged defamation and/or abuse of process.
 
                                                            -22-
 
ORDER
For the reasons stated above, it is HEREBY ORDERED that:
            1. The Plaintiffs’ Motion For Real Estate Attachment (Paper No. 4) (“Motion For Attachment”) is DENIED.
            2. The Defendant’s Motion To Dismiss under Mass. R. Civ. P. 12(b)(6) (Paper No. 5) is ALLOWED as to: (a) all violations of provisions in the Separation Agreement “relating to the children,” alleged in Count I of the Complaint, including the violations alleged in the Complaint at ¶¶ 68(c), 68(d), 68(e), 68(f), 68(g), 68(h), 68(I), and 68(j); and, (b) Count IV of the Complaint (intentional and negligent infliction of emotional distress) and those claims are HEREBY DISMISSED. The Motion to Dismiss is otherwise DENIED.