GRIFFIN vs. KAY, 101 Mass. App. Ct. 241

 
 GERALDINE GRIFFIN vs. HARRY MICHAEL KAY.

101 Mass. App. Ct. 241
 February 11, 2022 - June 15, 2022

Court Below: Probate and Family Court, Middlesex County
Present: Vuono, Shin, & Singh, JJ.

 

No. 21-P-302.

Divorce and Separation, Alimony, Modification of judgment, Separation agreement. Probate Court, Divorce. Contract, Separation agreement. Contempt.

In a divorce action, the Probate and Family Court judge hearing a complaint for modification properly treated the husband's retirement as a basis for modification of alimony, where the parties' agreed-upon language, inserted into the amended divorce judgment, clearly identified the husband's retirement as one of two exceptions to the survival of their separation agreement [242-245]; further, the judge did not abuse her discretion in modifying the award, where, on the record in the case, this court could not say that the judge failed to achieve a fair balance of sacrifice between the parties [245-248]; however, this court vacated the judgment in part and remanded the matter to the Probate and Family Court for a redetermination of the husband's alimony arrearage obligation due under the separation agreement's cost of living adjustment provision, using a definition for "gross earned income" supplied by the judge in light of there being no definition in the agreement [248-250]. 

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on February 14, 2002. 

 A complaint for contempt, filed on May 3, 2017, and a complaint for modification, filed on June 9, 2017, were heard by Janine D. Rivers, J.

Robert J. Rivers, Jr. (Jessica M. Dubin also present) for 

the wife.

 Maureen McBrien (Wendy O. Hickey & Alexander D. Jones also present) for the husband.

 SINGH, J. At the time of their 2004 divorce, Geraldine Griffin (wife) and Harry Michael Kay (husband) executed a separation agreement (agreement) requiring the husband to pay alimony of $90,000 per year, subject to an upward cost of living adjustment (COLA) to be determined annually based on changes in the Consumer Price Index (CPI) and the husband's annual "gross earned income." "Gross earned income" was not defined in the agreement. In 2017, the wife filed a complaint for contempt alleging 

 Page 242 

that the husband failed to pay additional alimony as required by the agreement's COLA provision. The husband then filed a complaint for modification seeking to reduce or terminate alimony because of his retirement. 

 After a four-day trial on the parties' consolidated complaints, a judge of the Probate and Family Court issued a judgment (modification judgment) that (1) reduced the husband's alimony obligation to $480 per week ($24,960 per year), and (2) found the husband not guilty of contempt because the parties' failure to define "gross earned income" rendered the COLA provision ambiguous. In the accompanying findings of fact, the judge supplied a definition for "gross earned income." She did not, however, use that definition to determine the amounts owed by the husband under the COLA provision. 

 The wife appeals, [Note 1] arguing that the judge (1) impermissibly modified the parties' surviving agreement; (2) failed to achieve a "fair balance of sacrifice," as required by Pierce v. Pierce, 455 Mass. 286, 296 (2009), when reducing the husband's alimony payments by seventy-two percent; and (3) should have determined the husband's alimony arrearage under the COLA provision using her definition of "gross earned income." We vacate so much of the modification judgment and the related postjudgment orders as pertains to the determination of the husband's COLA arrearage, and we remand for further proceedings consistent with this opinion. We affirm the modification judgment in all other respects. 

 Discussion. 1. Modification of surviving agreement. The wife first contends that the judge was without the authority to modify the husband's alimony obligation on the basis of his retirement, because the parties' agreement survived the divorce judgment and was not subject to judicial modification. We disagree. 

 We begin with two familiar principles. First, a separation agreement that merges with the divorce judgment loses its independent significance and is therefore modifiable by a judge upon a material and substantial change in circumstances. See Chin v. Merriot, 470 Mass. 527, 534-535 (2015); DeCristofaro v. DeCristofaro, 24 Mass. App. Ct. 231, 235 (1987). Second, a separation agreement that survives the divorce judgment, unlike a merged agreement, retains its force as an independent contract and is 

 Page 243 

generally not modifiable by a judge. [Note 2] See Chin, supra at 535 n.12; DeCristofaro, supra at 235-236. The question whether an agreement merged with the divorce judgment is "afforded plenary review" (citation omitted). Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008). "It is the intent of the parties which controls, . . . and that intent is determined from the whole agreement." DeCristofaro, supra at 237. 

 Here, the agreement contained the following paragraphs addressing survival and modification: 

"13. . . . . Notwithstanding the incorporation of this [a]greement in the [divorce judgment], it shall not be merged in the [j]udgment, but shall survive the same . . . retaining its independent significance as a contract between the parties. Provided, however, in the event of a material negative and involuntary change in the circumstances of either party, that party may seek to modify the provisions of this agreement most [a]ffected by that change."

"14. Except as set forth in paragraph 13 above, if any judicial judgment should be sought or entered with respect to alimony . . . neither party will seek to have such judgment or any modification thereof provide for payments . . . different in any way from those provided for in this [a]greement." 

"18. This [a]greement shall not be altered or modified except by an instrument in writing signed and acknowledged by the [h]usband and the [w]ife." 

 Additionally, in exhibit A, paragraph 7, the agreement provided that "[n]otwithstanding anything to the contrary, the parties agree to review alimony payments upon the normal retirement of the [h]usband." [Note 3] 

 A divorce judgment, issued on March 2, 2004, provided that the agreement was "incorporated and not merged into this [j]udgment but nevertheless shall survive and have independent legal significance." However, on March 23, 2004, the husband filed a motion, assented to by the wife, seeking to "correct a clerical 

 Page 244 

mistake" in the divorce judgment insofar as "[t]he terms of the agreement were to survive subject to the limited change of circumstance provision in paragraph 13 on page 6 and an alimony review upon the defendant's normal retirement as provided in [e]xhibit 'A', paragraph 7." On March 31, 2004, an amended divorce judgment issued, providing that the agreement was "incorporated and not merged into this [j]udgment but nevertheless shall survive and have independent legal significance subject to the limited change of circumstance provision in paragraph 13 on page 6 and an alimony review upon the defendant's normal retirement as provided in [e]xhibit A, paragraph 7" (emphasis added). Neither party objected to the language used in the amended divorce judgment -- indeed, it mirrored the language used in the assented-to motion to amend. 

 The wife contends that the agreement made "no provisions for merger . . . and only acknowledge[d] a limited change of circumstance provision 'in the event of a material negative and involuntary change in the circumstances of either party.'" She asserts that the language in the agreement pertaining to the husband's retirement did not authorize modification on that ground; rather, it merely required the parties to privately review alimony once the husband had retired, with no ability to seek judicial review. However, as found by the judge, [Note 4] the parties' actions following the execution of the agreement demonstrated their intent to treat the husband's retirement as a ground for modification. Insofar as the language of the agreement left the parties' intentions regarding the husband's retirement somewhat unclear, they clarified their intentions by seeking to amend the divorce judgment to provide that the agreement survived "subject to" two exceptions: (1) a negative and involuntary material change in circumstances, and (2) the husband's retirement. See Parrish v. Parrish, 

 Page 245 

 30 Mass. App. Ct. 78, 87 (1991) ("to understand the subject matter of the agreement, to the extent it is doubtful or ambiguous, we resort to the conduct of the parties to determine 'the meaning that they themselves put upon any doubtful or ambiguous terms'" [citation omitted]). Although the parties chose to use "subject to" rather than "merge," their agreed-upon language inserted into the amended judgment clearly identified the husband's retirement as one of two exceptions to the agreement's survival, thus evidencing their intent for alimony to be judicially modifiable upon the husband's retirement. [Note 5] See id. at 85-87 (use of word "merge" not dispositive; parties' intention regarding merger controls, determined from agreement as whole and extrinsic evidence if agreement leaves parties' intention in doubt). Accordingly, it was not error to treat the husband's retirement as a basis for modification of alimony. 

 2. Fair balance of sacrifice. The wife next argues that the seventy-two percent reduction in the husband's alimony obligation failed to achieve the requisite "fair balance of sacrifice," Pierce, 455 Mass. at 296, because it created a significant disparity in the parties' lifestyles. Because the divorce judgment predates the Alimony Reform Act, G. L. c. 208, §§ 49-55, we apply "the standards for modification existing at the time the judgment entered." Chin, 470 Mass. at 535.

 "[I]n determining whether the amount of alimony should be modified based on a change of circumstances following entry of an earlier judgment for alimony," the judge "must consider [the] factors [set forth in G. L. c. 208, § 34, [Note 6]]" while "keep[ing] in mind that 'the statutory authority of a court to award alimony 

 Page 246 

continues to be grounded in the recipient spouse's need for support and the supporting spouse's ability to pay'" (citation omitted). Pierce, 455 Mass. at 295-296. "[T]he recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage." Id. at 296. "When, however, the supporting spouse does not have the ability to pay, the recipient spouse 'does not have an absolute right to live a lifestyle to which he or she has been accustomed in a marriage to the detriment of the provider spouse.'" Id., quoting Heins v. Ledis, 422 Mass. 477, 484 (1996). In such cases, "[t]he judge must consider all the statutory factors and reach a fair balance of sacrifice between the former spouses when financial resources are inadequate to maintain the marital standard of living." Pierce, supra. 

 Here, the judge made the following relevant findings. With respect to the husband's ability to pay, the judge found that his income had declined considerably upon retiring from his law practice, with his present income totaling approximately $73,165 per year (or $1,407 per week), consisting of Social Security and income generated from his assets. The judge found that the husband would entirely deplete his assets by age seventy-six if he maintained his lifestyle and continued to pay the wife alimony of $90,000 per year (in addition to paying for her Medicare supplement and a life insurance policy to secure his alimony obligation, both of which he remained obligated to pay under the modification judgment). [Note 7] 

 With respect to the wife, the judge found that she had been out of the workforce for decades and is not employable. In addition to alimony, the wife presently receives Social Security income of $1,087 per month. Although she attempted to supplement her income in the past by renting out her Nantucket home (which she received as part of the divorce settlement), the home was too expensive for her to maintain even while living a "limited and reduced lifestyle," resulting in her encumbering the property with a mortgage and incurring other debts. At the time of the modification trial, the Nantucket home was under a purchase and sale agreement, and the wife expected to receive "modest" net proceeds of approximately $150,000 after paying off her debts and capital gains taxes. The judge found that "upon the sale of the 

 Page 247 

Nantucket home, [the wife] will most notably have a reduction in living expenses thereby significantly decreasing her need for maintenance." The judge also considered the wife's receipt of greater assets at the time of the divorce, and her enjoyment of the Nantucket home for many years after the divorce while at the time of the divorce the husband lived in a one-bedroom condominium. 

 The wife complains of the disparity in the parties' lifestyles, asserting that she is unable to meet her needs with the substantially reduced alimony award. The judge found that the husband does not live a "particularly lavish post-divorce lifestyle," but it is "more in keeping with the former marital lifestyle" than the "limited and reduced lifestyle" currently maintained by the wife. [Note 8] However, the judge found that the husband's present lifestyle is attributable, in part, to the financial contributions of his current spouse (who does not owe a duty of support to the wife). See Pierce, 455 Mass. at 299-300 (affirming sixty-two percent reduction in alimony where payor's ability to maintain lifestyle after retiring was made possible, in part, by his current spouse's financial contributions). Moreover, the judge did not find the wife's claimed expenses credible because they were based on her lifestyle while residing in the Nantucket home, which she was in the process of selling. The judge found that eighty-nine percent of the wife's claimed expenses of $2,652.13 per week ($137,910.76 per year) were associated with the Nantucket home. The judge did not credit the wife's claim that her expenses would remain the same after moving out of the Nantucket home, finding that many significant expenses associated with the property (including a mortgage payment of $5,328 per month, gardening expenses of $939 per month, and "expensive repairs") were "unlikely to be replicated in her new home." [Note 9] We see no reason to disturb the judge's assessment of the wife's credibility in this regard. See Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995). 

 The judge's findings reflect consideration of all relevant factors under G. L. c. 208, § 34. See Pierce, 455 Mass. at 295-296. While 

 Page 248 

the reduction in the husband's alimony obligation was substantial, we cannot, on this record, say that the judge failed to achieve a fair balance of sacrifice between the parties. See id. at 296, 299-300. Accordingly, we discern no abuse of discretion in the modified alimony award. See id. at 293. 

 3. COLA provision. The wife next contends that the judge, after resolving the ambiguity in the COLA provision by supplying a definition for "gross earned income," abused her discretion in failing to determine the husband's arrearage under the COLA provision using that definition. The COLA provision provided that:

"[i]f on January 31, 2006, or any subsequent January 31, the Consumer Price Index for Urban Wage Earners and Clerical Workers, Boston Massachusetts published by the Bureau of Labor Statistics of the United States Department of Labor (the 'CPI') is greater than it was on January 31, 2005, the monthly alimony payments shall be adjusted commensurately for the following year by the percentage increase that the CPI on such date exceeds the CPI on January 31, 2005; provided, that the increase shall not be greater than the increase in the [h]usband[']s gross earned income for the same period. The increase shall be on a cumulative basis based on [the] [h]usband[']s income for 2004 and the CPI as of January 31, 2005."

 The judge credited the wife's expert witness, who testified that the agreement "requires a computation and comparison between the cumulative increases of the CPI as compared to the cumulative percentage increases in [the husband's] gross earned income." The judge found that, "[p]ursuant to the parties' [s]eparation [a]greement, it is clear that [the husband] and [the wife] intended that there would be some adjustment to [the husband's] alimony obligation" based on increases in the CPI. However, the judge found that the COLA provision "is ambiguous because it does not provide an exact definition of 'gross earned income.'" The judge proceeded, however, to resolve the ambiguity by supplying a definition for "gross earned income": the husband's "W-2 and ordinary business income (off the K-1) only." [Note 10] See President & Fellows of Harvard College v. PECO Energy Co., 57 Mass. App. Ct. 888, 

 Page 249 

896 (2003) ("When the parties to a . . . contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court" [citation omitted]). The judge then calculated the husband's "gross earned income" for every year from 2004 through 2017. Despite clarifying the ambiguous term and determining the husband's annual "'gross earned income' for purposes of implementing the COLA provision[]," the judge did not use those income figures to calculate the husband's arrearage under the COLA provision formula. [Note 11] Instead, the judge merely concluded that the ambiguity rendered a contempt finding inappropriate and found the husband not guilty of contempt. 

 On appeal, the wife does not quarrel with the lack of a contempt finding against the husband. Rather, she maintains, and we are persuaded, that because the judge resolved the ambiguity in the COLA provision by providing a definition for "gross earned income," the judge should have used that definition to establish an arrearage amount under the COLA provision formula. It is well settled that, even in the absence of a contempt finding, judges possess inherent authority to clarify the rights and obligations of the parties based upon the issues raised in a complaint for contempt, see Colorio, 72 Mass. App. Ct. at 384-385, and "to enter an order for payment of monies due pursuant to [their] determination of the parties' rights under the separation agreement." Id. at 389, quoting Krapf v. Krapf, 55 Mass. App. Ct. 485, 491 (2002), S.C., 439 Mass. 97 (2003). See Smith v. Smith, 93 Mass. App. Ct. 361, 364 (2018); Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009). While the husband correctly asserts that there is no strict rule requiring a judge to order the payment of monies due in the absence of a contempt finding, we think the particular circumstances of this case warranted such an order.

 "Absent countervailing equities, separation agreements that retain their independent significance are subject to the same rules of construction and interpretation applicable to contracts generally. . . . As such, it is the intent of the parties that controls." 

 Page 250 

Krapf, 55 Mass. App. Ct. at 489. Where, as here, (1) the judge found that the parties clearly intended for upward adjustments of alimony pursuant to the COLA provision, and (2) the parties agreed that the husband was in arrears pursuant to the COLA provision (but disagreed as to the arrearage amount because of their different definitions for "gross earned income"), the judge had the authority to enforce the parties' intentions using her own definition for "gross earned income" to calculate the husband's arrearage under the COLA provision. See Siebe, Inc. v. Louis M. Gerson Co., 74 Mass. App. Ct. 544, 549-550 (2009) ("When the intentions of the parties can be clearly inferred from the terms of the contract, the court will enforce those intentions as long as they 'can be fairly carried out consistent with settled rules of law'" [citation omitted]). 

 Adjudicating the wife's complaint for contempt without clarifying the husband's unpaid alimony obligation under the COLA provision left the wife with only one other avenue for relief: filing a complaint for declaratory judgment. See Krapf, 55 Mass. App. Ct. at 487. But where the issue of the husband's COLA arrearage was squarely before the judge and capable of resolution at that time, [Note 12] it would be contrary to the interest of judicial economy to require the wife to initiate a new action, which would necessitate further litigation and expenditure of the court's and the parties' resources. Accordingly, the matter is remanded for the judge to determine the husband's alimony arrearage under the COLA provision formula using the judge's definition of "gross earned income" (and the income figures that she calculated for each year). We leave to the judge's discretion whether to request further submissions from the parties on this issue. 

 Conclusion. Those portions of the orders denying the wife's motions to alter or amend the modification judgment and the findings are vacated to the extent they denied her requests related to the calculation of the husband's alimony arrearage under the COLA provision. The portion of the modification judgment pertaining to the husband's alimony arrearage due under the agreement's COLA provision is vacated, and the case is remanded for further proceedings consistent with this opinion. The judgment is 

 Page 251 

otherwise affirmed. [Note 13]

 So ordered.

FOOTNOTES
[Note 1] The wife appeals from the modification judgment and several related orders denying her motions to dismiss and to alter or amend the modification judgment and findings. 

[Note 2] Surviving agreements are only modifiable upon a showing of "something more" than a material change in circumstances (i.e., "countervailing equities"), which was not argued or demonstrated here. DeCristofaro, 24 Mass. App. Ct. at 235-236. 

[Note 3] The agreement further provided that alimony would terminate upon the first to occur of either party's death, or the wife's remarriage. 

[Note 4] The wife filed a motion to dismiss the husband's complaint for modification, asserting that the surviving agreement could not be modified on the basis of the husband's retirement. The motion judge (who did not preside over the modification trial) denied the wife's motion in an order dated September 20, 2017, finding that "[i]f the parties never intended to review alimony payments upon [the] [h]usband's normal retirement in [c]ourt, they would not have sought to change the prior [j]udgment," and thus "the [h]usband's alimony payments upon his normal retirement merged into the judgment and is modifiable." The trial judge found that the motion judge "resolved" the question whether the "[a]limony language merged or survived" and "reiterate[d] the [motion judge's] prior finding that the [h]usband's alimony payments upon his normal retirement merged and is modifiable." 

[Note 5] The case relied on by the wife, Moore v. Moore, 389 Mass. 21 (1983), is distinguishable because in that case, the judge's decision to include merger language in the divorce judgment was at odds with the parties' clear intention for the entire agreement to survive the judgment. Id. at 25-26. Here, by contrast, the parties jointly sought to amend the divorce judgment to specify two exceptions to the agreement's survival provision. 

[Note 6] These factors include: 

"the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income . . . the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." 

G. L. c. 208, § 34.

[Note 7] At the time of the modification trial, the husband was sixty-seven, and the wife was seventy-four. 

[Note 8] Although the husband reported rather significant country club expenses on his financial statement, the judge found that a portion of these expenses were "legitimate business expenses" to entertain his legal clients -- expenses that he would presumably no longer incur once retired. 

[Note 9] While the wife did not know where she would live after moving out of the Nantucket home, the judge credited her testimony that she was looking at rental properties starting at $2,100 per month. 

[Note 10] The wife's expert prepared calculations of the husband's "gross earned income" using his W-2 income, K-1 income, and his company-paid health insurance premiums and retirement contributions. The judge, however, "agree[d] with [the husband's] position in that [health insurance premiums and retirement benefits] should not be included when determining [the husband's] gross earned income for purposes of applying the COLA provision." 

[Note 11] Apart from the failure to define "gross earned income," the parties identify no other ambiguity in the COLA provision of the agreement, and we see none. See Colorio, 72 Mass. App. Ct. at 386 (interpretation of separation agreement is question of law subject to plenary review). 

[Note 12] In her motion to amend the modification judgment, which was denied, the wife requested that the husband's COLA arrearage be established using the judge's definition of "gross earned income." 

[Note 13] The husband's request for appellate fees and costs is denied. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.