APPEALS COURT 
 
 MICHAEL D. CAVANAGH vs. LYNN A. CAVANAGH

 
 Docket:
 23-P-1461
 
 
 Dates:
 December 2, 2024 – July 9, 2025
 
 
 Present:
 Massing, Walsh, & Brennan, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Divorce and Separation, Modification of judgment, Alimony, Child support, Sanctions. Parent and Child, Child support. Judgment, Interest. Practice, Civil, Interest, Contempt.
 
 

             Complaint for divorce filed in the Hampden Division of the Probate and Family Court Department on September 16, 2015.
            Following review by the Supreme Judicial Court, 490 Mass. 398 (2022), a complaint for modification, filed on March 31, 2020, was heard by Ellen M. Randle, J.
            Ann E. Dargie for the father.
            Jeff Goldman for the mother.
            Krista M. Ellis, Anne Sheldon, & Jamie Ann Sabino, for Massachusetts Law Reform Institute & another, amici curiae, submitted a brief.
            Margaret J. Palladino & Lori S. Johnson, pro se, amici curiae, submitted a brief.
            BRENNAN, J.  In Cavanagh v. Cavanagh, 490 Mass. 398, 410 (2022), the Supreme Judicial Court announced a new three-step framework for Probate and Family Court judges to follow when evaluating a recipient spouse's request for alimony in cases where child support is "contemplated."  The Supreme Judicial Court remanded the case to the trial judge with instructions to recalculate child support and redetermine alimony pursuant to the three-step framework and to address several other issues.  See id. at 431.  Following a remand trial, the judge issued a "corrected judgment after remand" (remand judgment) that, among other things, declined to award alimony to Lynn A. Cavanagh (mother) and ordered Michael D. Cavanagh (father) to pay weekly child support of $650. 
            Before us are the parties' cross appeals from the remand judgment.[1]  Concluding that the trial judge erred in considering the availability of child support for purposes of determining the mother's need for alimony when applying the Cavanagh framework, we vacate the provisions of the remand judgment pertaining to alimony and child support (both retroactive and prospective).  We further vacate the portion of the remand judgment assessing a monetary sanction against the mother's counsel, along with the orders allowing the father's motion for sanctions and denying the mother's motion to annul the contempt judgment entered against her in July 2020.  The remainder of the remand judgment is affirmed.  
            Background.  We summarize the pertinent portions of the Supreme Judicial Court's opinion and the trial judge's findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion.  See Cavanagh, 490 Mass. at 399.
            During the majority of the parties' marriage of approximately twenty years, the father was the primary income earner and the mother was the primary homemaker and caretaker of their three children.  In the early years, however, the mother worked as a teacher at a private Catholic school, while the father completed his education to become a physician's assistant (PA).  Over this time, the father benefited from the mother's financial support and the assistance of her family, as the parties first lived with the mother's parents before moving into a home purchased by the mother and her father.  The father began working as a PA at an orthopedic surgical practice in 1997 and, following the birth of the parties' eldest child in 1999, the mother left the workforce to care for the child.  Approximately seventeen years later, she reentered the workforce and resumed her former teaching position at the Catholic school.  During the marriage, the father's income afforded the parties a "comfortable middle-class lifestyle."  Around 2012, he took a second job as a per diem PA at a medical center to finance the children's private school education.  All three children attended the Catholic school where the mother worked before attending the Williston Northampton School (Williston), a preparatory school for grades seven through twelve.[2]  
            1.  Divorce proceedings.  In 2016, the parties entered into a separation agreement, which was incorporated into and merged with the judgment of divorce (divorce judgment).  The agreement provided, in relevant part, that (1) the mother would retain the marital home having an equity value of $213,997.56; (2) the mother would receive the sum of $108,209.68 from the father's 401(k) (which, at that time, was valued at $502,596.93)3; (3) the parties waived past and present alimony, but expressly reserved the right for future alimony; (4) the mother would have primary physical custody of the minor children, and the father would have overnight parenting time each Wednesday and every other weekend (Friday through Sunday); (5) the father would pay child support of $800 per week for all three unemancipated children[4]; and (6) with respect to the youngest child's educational costs, the mother was required to pay for his Catholic school tuition, while the father was required to contribute up to $20,000 annually toward tuition at a future agreed-upon preparatory school.
            2.  Modification proceedings.  In March 2020, the father filed a complaint for modification seeking a reduction in child support, and a complaint for contempt alleging that the mother unilaterally enrolled the youngest child at Williston over the father's objection.  The mother thereafter filed a counterclaim for modification seeking alimony.  She also sought reimbursement for the youngest child's Williston tuition and filed a complaint for contempt alleging that the father had refused to contribute $20,000 for that tuition as required by the agreement.  In July 2020, judgments issued adjudicating (1) the mother guilty of contempt for enrolling the youngest child at Williston without the father's consent, and (2) the father not guilty of contempt for refusing to pay for the child's Williston tuition. 
            The parties' pending complaints for modification were consolidated and, following a two-day trial in 2021, the judge issued a modification judgment providing, in relevant part, that (1) the father shall not be obligated to contribute to the youngest child's Williston tuition for seventh and eighth grade because the mother enrolled him without the father's consent; (2) the father shall pay $650 per week in child support for the youngest child (the older children were emancipated by that time), retroactive to the date of the eldest child's graduation from college; and (3) the father shall not pay alimony to the mother. 
            3.  First appeal.  The parties cross appealed and the Supreme Judicial Court granted direct appellate review.  See Cavanagh, 490 Mass. at 403.  The court ultimately vacated (1) the portions of the modification judgment pertaining to alimony, child support, and the father's "lack of obligation to contribute" to the youngest child's Williston tuition; and (2) the trial judge's finding that the mother "violated a clear and unequivocal command when she enrolled the youngest son at [Williston]."  Id. at 430-431.  The court provided detailed remand instructions that included directing the judge to apply a three-step framework to determine whether alimony was warranted, to recalculate child support pursuant to the 2021 guidelines (after including the father's eligible investment income), and to hold a new hearing to determine certain facts necessary to resolve the preparatory school dispute.  Cavanagh, 490 Mass. at 431.
            4.  Remand proceedings.  In April 2023, the parties appeared before the judge for a one-day remand trial.  Prior to trial, the mother urged the judge to limit the scope of the trial to the preparatory school dispute only.  The judge, however, reopened the evidence on several issues, including alimony and child support, and instructed the parties to file updated financial statements.  The judge denied the mother's motion to exclude evidence of her current living expenses for purposes of alimony and allowed the father's motion to preclude the mother's expert from testifying as to the issue of the father's investment income. 
            In the ensuing remand judgment, the judge (1) ordered the father to reimburse the mother in the amount of $40,000 for the youngest child's seventh and eighth grade tuition at Williston; (2) declined to award the mother prejudgment interest on the $40,000 tuition reimbursement; (3) ordered the father to pay weekly child support of $650, including retroactive arrears of $8,766; and (4) denied the mother's request for alimony.  The present cross appeals followed. 
            Discussion.  1.  Scope of remand trial.  The mother first contends that the trial judge "violated the mandate rule" by reopening the evidence to include child support and alimony.  She asserts that because the Supreme Judicial Court's remand instructions explicitly required a new evidentiary hearing only on the preparatory school dispute, the court implicitly precluded the reopening of evidence on all other issues.  Although we agree that the court did not explicitly direct the judge to hold a new evidentiary hearing on the issues of alimony and child support, we conclude that the judge's decision to do so was reasonably necessary to comply fully with "both the express terms and broader spirit" of the court's mandate.  Callahan v. County of Suffolk, 96 F.4th 362, 367 (2d Cir. 2024). 
            An appellate court's "remand instructions bec[o]me the governing 'law of the case.'"  City Coal Co. v. Noonan, 434 Mass. 709, 712 (2001).  See United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993) ("the so-called 'mandate rule,' generally requiring conformity with the commands of a superior [appellate] court on remand, is simply a specific application of the law of the case doctrine").  Accordingly, we begin with the remand instructions, which provided, in relevant part, that
"the judge shall determine whether an alimony award is appropriate and, if so, in what form and amount, pursuant to the interpretation and procedure set forth in this opinion.  The judge shall also hold a new hearing to determine (1) whether the parties . . . agreed that the youngest son would attend [Williston]; and (2) whether the father failed to engage in good faith efforts to agree to a preparatory school.  If the answer to either (1) or (2) is 'yes, . . . the judge shall order that the father contribute up to $20,000 per year to the cost of . . . [Williston].
"A new child support order shall issue based on a recalculation of the amount pursuant to the 2021 Child Support Guidelines after any interest, dividends, and capital gains not related to real or personal property transactions have been added to the calculation of the father's gross income."  Cavanagh, 490 Mass. at 431.
            In addition to those instructions, the court articulated certain objectives for the remand, including (1) issuing a child support order consistent with the current guidelines to avoid triggering another complaint for modification, see Cavanagh, 490 Mass. at 431 & n.31; and (2) ensuring that the trial judge considered all mandatory factors under G. L. c. 208, § 53 (a) when determining whether alimony was warranted pursuant to the three-step framework.  See Cavanagh, 490 Mass. at 409-411, 431.  The mother contends that the language in the remand instructions directing the judge to "determine" alimony and "recalculat[e]" child support reflected the court's intent that the father's support obligations be redetermined using the existing evidence from the 2021 trial.  However, based on the record before us, we are not persuaded that the evidence from the 2021 trial was sufficient to achieve the court's objectives.  
            To alleviate the need for another child support modification proceeding, the Supreme Judicial Court explained that the trial judge should recalculate child support pursuant to the 2021 guidelines (which went into effect after the 2021 judgment), because a "calculation pursuant to the 2018 [guidelines] would likely result in an award that is inconsistent with the [2021] guidelines and itself would be grounds for modification of the order."  Cavanagh, 490 Mass. at 431 n.31.  See G. L. c. 208, § 28 (modification of child support presumptively required where there is inconsistency between amount of existing order and amount that would result from application of current guidelines).  Although the court did not explicitly instruct the judge to take new evidence of the parties' current financial circumstances, it was appropriate for the judge to do so here because applying the current guidelines to the parties' then-current financial circumstances (rather than to their 2021 financial circumstances) furthered the court's objective of avoiding an inconsistency that would trigger a presumptive modification.  See Morales v. Morales, 464 Mass. 507, 512 n.9 (2013) (inconsistency presumptively requiring modification may arise from issuance of new guidelines or change in circumstances since prior judgment).[5]  See also Rule 401 (c) of the Supplemental Rules of the Probate Court (2012) (judge "may require from time to time during the pendency of . . . any action involving a financial order, a new financial statement containing current information as to the assets, liabilities, current income and expenses of the parties").
            The Supreme Judicial Court further held that the trial judge "must consider" all factors set forth in G. L. c. 208, § 53 (a) "when determining whether or in what . . . amount to award alimony," and may not "deny a request for alimony without making a fact-specific inquiry into the parties' circumstances, as evaluated through the application of these mandatory statutory factors."  Cavanagh, 490 Mass. at 408-409.  The court held that the judge must consider the § 53 (a) factors during each step of the three-step framework.  Cavanagh, supra at 410-411.  The trial judge and the parties did not have the benefit of these holdings at the time of the first trial in 2021.  The judge's 2021 findings addressed only one of the § 53 (a) factors,[6] and we cannot determine whether she was presented with evidence of the omitted factors because the record before us does not contain a transcript of the 2021 trial.  Importantly, there is nothing in the judge's decision, or in the portions of the 2021 trial record before us, addressing the "ability of each party to maintain the marital lifestyle."  G. L. c. 208, § 53 (a).  This factor is critical to evaluating a request for alimony because it informs the judge's determination of the recipient's need and, to a lesser extent, the payor's ability to pay.  See Young v. Young, 478 Mass. 1, 6 (2017), quoting Pierce v. Pierce, 455 Mass. 286, 296 (2009) ("where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage'").  
            The judge appropriately requested updated financial statements from the parties along with additional evidence relevant to the mandatory § 53 (a) factors.[7]  See Rule 401 (c) of the Supplemental Rules of the Probate Court (2012).  The judge did not violate the Supreme Judicial Court's mandate or otherwise err in reopening the evidence on remand with respect to the issues of child support and alimony.[8]
            2.  Alimony.  The mother next contends that the trial judge erred when evaluating her request for alimony by (1) considering the availability of child support when determining the mother's need under the three-step framework; and (2) eliminating certain expenses reported on her financial statement.  We agree. 
            a.  Three-step framework.  Where a request for alimony is made in a case in which child support payments are likely to be ordered, the judge must evaluate the request in three steps:  (1) calculate alimony first pursuant to the Alimony Reform Act (act), and then calculate child support pursuant to the Child Support Guidelines (guidelines) using the parties' postalimony incomes (step one); (2) calculate child support first, and then calculate alimony (step two); and (3) compare the base awards and tax consequences resulting from steps one and two, and determine the "most equitable" order for the family (step three).  Cavanagh, 490 Mass. at 410-411.
            In step one of the framework in the remand judgment, the judge (1) calculated 32.5 percent of the difference between the parties' gross incomes, which she described as "the mid-range of the percentages" set forth in G. L. c. 208, § 53 (b), arriving at an alimony award of $969 per week; and (2) used the parties' postalimony incomes to calculate a presumptive child support order of $491 per week.  She then immediately disavowed the results of her step one calculation, finding that "[a]n alimony award of $969 per week, even adjusted for taxes . . . in combination with the child support and mother's own net earned income of $939 weekly, far exceeds [her] 'need.'"  In step two of the framework, the judge (1) calculated a presumptive child support order of $650 per week; and (2) found that "zero alimony" was warranted because the mother "failed to show that she has a credible need for alimony" and the father "does not have the ability to pay."  In step three, the judge compared the results of steps one and two, finding that step one did not produce a "fair or equitable result" because the mother would have a "total net weekly income of $2,157" (comprised of after-tax net alimony of $727, child support of $491, and net earned income of $939), which was "almost twice the amount of [her] credible expenses."  The judge then concluded that step two produced the "most equitable outcome," by awarding no alimony and $650 per week in child support. 
            The trial judge erred in step one by considering the availability of child support when evaluating the mother's need for alimony.  The Supreme Judicial Court specifically rejected this approach, stating that "it makes little sense to tie the availability of alimony to the provision of child support where child support and alimony serve distinct purposes:  child support is intended to provide financial support for children of the parties, whereas alimony is intended to provide financial support to an economically dependent former spouse," thus any "argument that the mother can have no need for alimony so long as she receives child support is without merit."  Cavanagh, 490 Mass. at 409 & n.7.  While the judge did perform an alimony calculation using income before child support, she ultimately rejected her own percentage-based alimony calculation because after taking child support into account it exceeded the mother's need.  Thus, not only did the judge err in considering the availability of child support when calculating the mother's need for alimony purposes, she compounded the error by calculating a percentage-based alimony award that exceeded her own determination of the mother's need.  Although the act contemplates percentage-based awards insofar as it caps alimony at thirty to thirty-five percent "of the difference between the parties' gross incomes," the act also provides that alimony "should generally not exceed the recipient's need."  G. L. c. 208, § 53 (b).  In other words, a percentage-based alimony award that exceeded the mother's need was error.[9]  
            Here, the correct approach under step one would have been to (1) determine the mother's actual need for alimony (i.e., the amount necessary for her to maintain the marital lifestyle, after taking into account her net earned income only[10]) and set the alimony award at that amount (rather than at an arbitrary percentage[11]); and (2) use the parties' postalimony incomes to calculate child support.  Cavanagh, 490 Mass. at 410.  Consideration of whether the total amount of alimony and child support determined at step one was excessive or inequitable should have been reserved for consideration at step three.  Because this did not occur, we must remand the case for a redetermination of both alimony and child support under the three-step framework, based on the existing evidence as of the conclusion of the April 2023 remand trial, with no further evidentiary hearing.  
            b.  Expenses.  In determining the mother's need for alimony, the judge found that at the time of the remand trial the mother's "standard of living" was "substantially comparable" to the "comfortable middle-class lifestyle" enjoyed by the parties during the marriage.[12]  As noted by the Supreme Judicial Court, a component of the parties' marital lifestyle was keeping the marital home in "good repair."  Cavanagh, 490 Mass. at 400.  See Openshaw v. Openshaw, 493 Mass. 599, 605 (2024) ("'marital lifestyle' includes the typical way the parties regularly allocated their income during the marriage").  The judge acknowledged that the mother had deferred some repairs and maintenance for the marital home since the divorce, and the judge appeared to credit her testimony that she currently needed to replace two major appliances, and repair or replace the roof and the pool liner.  Despite these findings, the judge declined to credit any portion of the $480.76 per week in home repair and maintenance expenses claimed by the mother.  The judge found that amount to be "overstated" yet also found that there was "insufficient credible evidence from which [she] could appropriately find a different current amount."  Although it might have been within the judge's discretion to reject a portion of the mother's claimed repair and maintenance expenses, determining that the mother had zero such expenses was an abuse of discretion under the circumstances presented here.[13]  The judge also abused her discretion in omitting, without explanation, the mother's weekly payment of $367.76 toward her outstanding liabilities.
            Accordingly, in redetermining the mother's need for alimony on remand, the judge should include in the mother's weekly expenses (1) an amount sufficient to keep her home in reasonably good repair consistent with the marital lifestyle; and (2) her payments toward liabilities to the extent supported by credible evidence.  
            3.  Father's income.  The judge found that the father currently earns total employment income of approximately $214,700 per year, comprised of his base salary ($150,000), head PA stipend ($12,500), employer-sponsored 401(k) contributions ("approximately $10,000"), "bonuses of approximately $35,000 annually,"[14] and "miscellaneous other perks related to his job" totaling "approximately $7,200."  The judge also found that the father earned investment income (consisting of interest, dividends, and capital gains) of approximately $18,300 per year in 2021 and 2022, and included fifty percent of that investment income in the father's total income for purposes of "calculating child support and alimony."  Both parties claim error with respect to the judge's treatment of the father's investment income, and the father claims error with respect to the calculation of his perquisite income.
            a.  Investment income.  The judge explained that she chose to consider only one-half of the father's investment income for purposes of "calculating child support and alimony," because "most of [his] investment income is being generated by his 401k plan which was divided between the parties in their divorce action," and the mother "failed to provide . . . any evidence of the [investment income] generated by the share of father's 401k plan awarded to her in the divorce settlement."  The mother asserts that the judge should have considered one hundred percent of the father's investment income when calculating child support; the father, however, contends that it should have been entirely excluded.  We agree with the father that it was error, for purposes of alimony, to consider any investment income derived from an asset assigned in the divorce.  See G. L. c. 208, § 53 (c) (1).  However, we agree with the mother that it was an abuse of discretion to exclude fifty percent of the father's investment income for purposes of calculating child support. 
            The Supreme Judicial Court specifically directed the trial judge to include all of the father's eligible investment income, including interest, dividends, and capital gains (except gains attributed to the sale of real or personal property) when calculating child support.  See Cavanagh, 490 Mass. at 422.  It was error to exclude one-half of that income on the basis that the mother failed to present evidence of the amount attributable to the share of the 401(k) account assigned to her in the divorce.  It was the father's burden to present complete and accurate evidence of his income.  See Maillet v. Maillet, 64 Mass. App. Ct. 683, 690 (2005); Rule 401 (a) of the Supplemental Rules of the Probate Court (2012).  If he sought to exclude a portion of the investment income reported on the 401(k) account statement bearing his individual name, he should have presented evidence establishing what, if any, portion was not attributable to his 401(k) share.  Instead, the father successfully moved to exclude the testimony of the mother's proffered investment income expert and failed to present any alternative expert witness or relevant documentary evidence of his own. 
            Moreover, even if it were proper to exclude the portion of the father's investment income attributable to the mother's 401(k) share -- which we cannot say based on the record before us -- excluding fifty percent would still likely have been an abuse of discretion because the mother's share appears to be equivalent to less than twenty percent of the total 401(k) account balance.[15]  Accordingly, on remand, the judge should (1) exclude for purposes of calculating alimony any investment income derived from assets divided in the divorce, consistent with G. L. c. 208, § 53 (c) (1); and (2) include for purposes of calculating child support all of the father's investment income as found in her 2023 rationale.[16]
            b.  Perquisite income.  The father contends that the judge improperly imputed to him income from perquisites in the amount of $7,200 per year without making any findings identifying the "perks" or how they were calculated.  The father asserts that, because the judge considered his salary, stipend, bonuses, and employer-sponsored 401(k) contributions, the only other income sources that could have been treated as perquisite income were his urgent care coverage payments of $66.66 per week and insurance incentive payments of $26.70 per week, which add up to only $4,854.72 per year.  
            Based on our review of the record, it appears that the judge imputed income from the following two additional perks:  (1) reimbursements for telephone services totaling approximately $1,235 per year, which is supported by the father's trial testimony; and (2) payments for "clinical duties" totaling approximately $1,250 per year, as set forth in the mother's proposed rationale filed after the trial.[17]  Although there was some testimony concerning clinical coverage performed by the father, we cannot find any evidence in the record reflecting a clinical incentive earned by him in the approximate amount of $1,250.[18]  Accordingly, on remand the judge should identify the composition of the father's perquisite income and correct any errors in computing the total amount, if necessary.  Any recomputation of such income shall be based on the existing evidence without a further hearing.
            4.  Consideration of parenting time for purposes of child support.  Pursuant to the parenting schedule set forth in the parties' separation agreement, the father was to provide approximately one-third of the parenting time for the children.  Following the remand trial, the mother filed a proposed rationale requesting an upward deviation from the presumptive child support guidelines amount on the basis that the father was currently providing substantially less than one-third of the parenting time for the youngest child.  Instead of deviating upward, however, the judge ultimately ordered support at the presumptive level, which the mother contends was an abuse of discretion.
            Where a parent provides substantially less than one-third of the parenting time, the judge "may" deviate upward from the presumptive child support order, but such a deviation is not mandated by the guidelines.  Child Support Guidelines § IV(B) (Oct. 2021).  The mother nevertheless asserts that, under our case law, a judge's failure to deviate upward is an abuse of discretion where "the uncontested evidence establishes that one parent provides substantially more than [two-thirds] of parental care."  See Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 531 & n.13 (2016); Casey v. Casey, 79 Mass. App. Ct. 623, 635 (2011).  
            Here, we cannot say that the record "establishes" facts requiring an upward deviation.  There has been no judicial modification of the original parenting schedule, and there was minimal testimony at the remand trial regarding the parties' adherence, or lack thereof, to that schedule.  We thus are not persuaded that the evidence at the remand trial compelled a finding that the father provided substantially less than one-third of the parenting time for the youngest child.  Accordingly, we discern no abuse of discretion in the judge's decision to order support at the presumptive level rather than deviate upward based on a substantial disparity in parenting time.  See Wasson v. Wasson, 81 Mass. App. Ct. 574, 576 (2012) (judge's decision regarding child support in modification proceeding reviewed for abuse of discretion).
            5.  Retroactive support calculation.  The father contends that the judge failed to explain adequately how she arrived at the retroactive child support figure of $8,766.  Having reviewed the numerous subsidiary issues raised by the father with respect to the determination of this figure, we agree that certain aspects of the judge's calculations are not readily explained by the record, most notably the first support calculation period ending on July 10, 2021 (a date that does not appear to be tied to any child's emancipation or a change in either party's income).  Accordingly, on remand, after redetermining alimony and child support under the three-step framework, the judge should recalculate retroactive support and explain how she arrived at that figure.  Moreover, in recalculating retroactive support, the judge should apply the guidelines that were in effect during the relevant time period, such that any child support due before October 4, 2021 (the effective date of the 2021 guidelines) should be calculated using the 2018 guidelines, and any child support due on or after October 4, 2021 should be calculated using the 2021 guidelines.
            6.  Tuition reimbursement.  Pursuant to the Supreme Judicial Court's mandate, the trial judge was to determine "whether the father failed to engage in good faith efforts to agree to a preparatory school" and, "[i]f the answer . . . is 'yes,' the judge shall order that the father contribute up to $20,000 per year to the cost of the youngest son's attendance for grades seven through twelve at [Williston]."  Cavanagh, 490 Mass. at 431.  The judge ultimately concluded that the father failed to engage in good faith efforts to agree on a preparatory school and ordered him to reimburse the mother $40,000 for the child's seventh and eighth grade tuition at Williston.  The father contends that the judge's ultimate conclusion was contradicted by her subsidiary finding that the father took the "good faith" position that the child should remain at the parochial school through eighth grade, thus rendering the reimbursement improper.[19]  We disagree.  
            Contrary to the father's assertion, the reimbursement order was supported by the judge's subsidiary findings that the father proposed only for the child to continue attending the Catholic school (which did not qualify as a preparatory school) and failed to propose any alternative preparatory schools after voicing his opposition to Williston.  The father's claim that the mother also failed to propose alternative preparatory schools is unavailing in light of the Supreme Judicial Court's observation that the mother's uncontroverted testimony at the 2021 trial revealed that she sent many emails to the father "offering alternative preparatory schools to which they might send the youngest son."  Cavanagh, 490 Mass. 412.  Likewise, we are unpersuaded by the father's assertion that the reimbursement order was at odds with the 2020 judgment finding him not guilty of contempt for refusing to pay for Williston.  Even in the absence of a contempt finding, the judge was empowered to determine the father's financial obligations, and to order him to pay any monies due, under the agreement.  See Griffin v. Kay, 101 Mass. App. Ct. 241, 249 (2022).  
            7.  Prejudgment interest.  The mother contends that the judge erroneously denied her request for prejudgment interest on the $40,000 tuition reimbursement.[20].  We disagree.
            During the remand proceedings, the mother took the position that she was entitled to statutory prejudgment interest pursuant G. L. c. 231, § 6C,[21] because the father's obligation to pay for the youngest child's Williston tuition arose from a contract, i.e., the parties' separation agreement.  The judge disagreed, correctly determining that § 6C did not apply because the parties' separation agreement had merged with the divorce judgment and thus no breach of contract action could be maintained.  See Cavanagh, 490 Mass. at 429 (where separation agreement merges with divorce judgment, it "loses all independent legal significance" and "[n]o action for breach of the separation agreement may be maintained"); Halpern v. Rabb, 75 Mass. App. Ct. 331, 338-339 (2009) (prejudgment interest under G. L. c. 231, § 6C unavailable to mother who brought contempt action against father for unpaid child support because "she could not have maintained an action for breach of the separation agreement's child support provisions because those provisions merged into the judgments").[22]  The judge concluded that she was "not inclined to award interest on the $40,000 where (among other things) the parties' [separation] [a]greement was ambiguous as to father's obligation regarding preparatory school for [the youngest child] until the [Supreme Judicial Court] clarified that obligation in a manner that was different from father's prior understanding." 
            The mother now argues for the first time on appeal that the judge "lacked discretion" to "withhold" prejudgment interest "regardless whether a statute specifically governs the award of interest in the case" because "prejudgment interest from the date the funds were lost is generally automatic" under the common law rule.  The mother acknowledges that "the civil rule allowing a clerk to add interest to a judgment does not extend to the domestic relations rules,"[23] but she maintains that the "underlying common law rule," Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988), "ought to extend to Probate Court proceedings, just as it extends to administrative adjudications also not covered by the civil rules."  Because the mother failed to raise this argument below, it is waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).  Even assuming that the argument was not waived, the mother has not set forth any binding legal authority in her brief supporting her claim that the judge lacked discretion under the common-law rule to deny prejudgment interest in an action to modify an ambiguous divorce judgment provision.[24]  See Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 201 n.22 (2021) ("A nonstatutory award of prejudgment interest depends on a balancing of the equities" and judge's decision "declining to award prejudgment interest under common-law principles" is reviewed for abuse of discretion).  Accordingly, we decline to disturb the judge's decision regarding prejudgment interest.
            8.  Contempt judgment against mother.  As set forth in the rationale accompanying the 2021 modification judgment, "[o]n July 9, 2020, [the judge] found Mother in contempt for her unilateral action of enrolling [the youngest child] in Williston despite Father's voiced disagreement, which action was a 'disobedience of a clear and unequivocal command.'"  The Supreme Judicial Court "vacate[d] so much of the judge's rationale finding . . . that the mother violated a clear and unequivocal command when she enrolled the youngest son at [Williston]."  Cavanagh, 490 Mass. at 431.  On remand, the mother filed a motion seeking to "lift, vacate, and annul" the July 2020 contempt judgment because it was "based on the same finding vacated by the Supreme Judicial Court."[25]  The trial judge denied the mother's motion in a margin endorsement with no accompanying explanation, which the mother claims was error.  Because the trial judge denied the mother's motion without explanation and the reason for the denial is not otherwise apparent in the record, we are unable to "to test the judge's reasoning for abuse of discretion."  Commonwealth v. Grassie, 476 Mass. 202, 215 (2017).  See Dacey v. Burgess, 491 Mass. 311, 317 (2023) (denial of motion to vacate reviewed for abuse of discretion).  Accordingly, given the unique circumstances presented here, we vacate the order denying the mother's motion to annul and remand the matter so that the judge may reconsider the motion and, however she decides, explain the basis for her ruling.  See id.
            9.  Sanctions.  Ten days before the remand trial, the mother filed several motions in limine, three of which sought to preclude the father's counsel from making (1) "ad hominem statements or arguments" regarding the mother or her attorney, (2) arguments "urging . . . disregard" of the Supreme Judicial Court's mandate, and (3) assertions of fact.  The father moved to strike those motions, asserting that they "ha[d] no litigation purpose," contained "various personal attacks against [his] counsel," and were "designed solely to frustrate the process."  The father also requested that monetary sanctions be assessed, arguing that it was "reasonable . . . [to] be compensated for being forced to defend against [the mother's] counsel's attempts to pollute the judicial process."
            A few days before trial, the parties appeared for a hearing on several motions, including the mother's three motions in limine directed at the father's counsel.  Toward the end of the hearing, the judge invited the father's counsel to argue the motion to strike and for sanctions.  After the father's counsel made a brief argument, the judge asked the mother's counsel, "Anything you want to add?".  The mother's counsel replied that the motions in limine were filed to prevent "erroneous" findings "based on statements . . . made at trial," and that the motions were "not [meant] to offend anyone.  We just want to ensure that next week's trial is conducted in a cordial manner."  The hearing concluded soon thereafter, and at no point did the judge state that she was inclined to impose sanctions.  The judge subsequently allowed the father's motion to strike and for sanctions in a margin endorsement, directing the father's counsel to submit an affidavit of fees by the commencement of trial.  As part of the remand judgment, the judge ordered the mother's counsel to pay $900 without making any findings or explaining her rationale for the sanction. 
            The mother contends that it was improper to assess a monetary sanction against her attorney without providing a rationale or holding a hearing dedicated to the issue of sanctions.[26]  A judge may "impose reasonable court costs on an attorney who delays adjudication and squanders limited judicial resources," but the judge "must give the attorney fair notice, the opportunity to be heard, and must set forth [the] reasons and financial basis for the assessment."  Clark v. Clark, 47 Mass. App. Ct. 737, 743-744 (1999).  We acknowledge the judge's intimate familiarity with the parties, which may have informed her decision to impose sanctions.  Nevertheless, we conclude that the judge abused her discretion by not affording the mother's counsel an adequate opportunity to be heard on the specific issue of sanctions, see Avelino-Wright v. Wright, 51 Mass. App. Ct. 1, 6-7 (2001), and by not "set[ting] forth" the reasons and financial basis for the monetary sanction imposed.  Clark, supra at 744.  See Wong v. Luu, 472 Mass. 208, 220 (2015) (judge's imposition of sanctions reviewed for abuse of discretion).  Accordingly, the $900 sanction must be vacated and the matter remanded for a hearing.
            Conclusion.  Paragraphs 2, 3, 4, and so much of paragraph 5 as awards sanctions, of the corrected judgment after remand dated October 6, 2023, are vacated.  The judgment is otherwise affirmed.  We further vacate (1) so much of the April 24, 2023 order allowing the father's request for sanctions, and (2) the January 20, 2023 order denying the mother's motion to annul the contempt judgment.  The case is remanded for further proceedings consistent with this opinion.  The judge's redetermination of alimony and child support (including any retroactive amounts due) on remand shall be based on the existing evidence, without further evidentiary hearing.  The father shall continue paying child support of $650 per week as a temporary order during the pendency of the remand, unless otherwise ordered by the judge.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus briefs submitted by Massachusetts Law Reform Institute and Community Legal Aid; and by Margaret J. Palladino and Lori S. Johnson.
            [2] The eldest son attended Williston for grades nine through twelve; the middle son attended Williston for grades seven through twelve.  The youngest began attending Williston in the seventh grade, which became the basis for a dispute discussed infra.
            [3] The mother's one-half interest in the father's 401(k) ($251,298.47) was subject to several offsets (including the father's share of the marital home equity, his postdivorce mortgage payments, and other reimbursements), thereby resulting in the mother receiving $108,209.68. 
            [4] This amount represented an upward deviation from the presumptive guidelines order in light of the mother's obligation to pay for substantial gymnastics costs 
            [5] Both parties' financial circumstances changed between the time of the first trial in 2021 and the remand trial in 2023:  the mother's gross weekly income nearly doubled, while the father's income declined slightly.  The change in the mother's income alone would have resulted in an inconsistency presumptively requiring modification if the judge had used the parties' 2021 incomes when calculating child support on remand.
            [6] The judge's 2021 findings addressed only the parties' respective incomes and the father's employment.  The findings did not address "the length of the marriage; age of the parties; health of the parties; . . . employment [of the mother] and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; [and] lost economic opportunity as a result of the marriage."  G. L. c. 208, § 53 (a). 
            [7] The mother argued below that evidence of her current living expenses was irrelevant to alimony because it did not reflect "what it would cost to restore her to the marital standard of living."  See Cavanagh, 490 Mass. at 408 n.6. ("a recipient spouse's need is not defined as an amount required to maintain a former spouse at a subsistence level based on current reported expenses").  On appeal, she similarly argues that it was error for the judge to limit evaluation of the mother's need for alimony to the short form financial statement, which established subsistence level needs and did not include certain expenses that the mother claimed she incurred.  However, in many cases, the determination of a recipient's need for alimony will require a judge to compare the former marital lifestyle to the recipient's current lifestyle, the latter of which may be established with evidence of current living expenses.  See Zaleski v. Zaleski, 469 Mass. 230, 243 (2014) (standard of living may be established by "household spending"); M.C. v. T.K., 463 Mass. 226, 234 n.11 (2012).  
            [8] The mother also contends that she was prejudiced as a result of the judge's decision to take new evidence on alimony, because the father's employment income decreased by approximately $259 per week between the 2021 and 2023 trials as a result of his decision to stop working at his second job as a per diem PA.  The parties' agreement, however, excluded this income from being considered for purposes of alimony because it was being used to pay for the children's preparatory school tuition.  Given that the judge ordered the father to pay for the youngest child's tuition at Williston (even after he no longer had a second job financing that obligation), it is unlikely that the judge would have disregarded the parties' agreement and used the father's income from his second job to calculate alimony.  The mother has therefore failed to demonstrate the prejudice she claims.
            [9] A judge may deviate from the "amount limits" in § 53 (b) upon making specific written findings justifying deviation, which did not occur here.  G. L. c. 208, § 53 (e). 
            [10] If the judge finds that the father lacks the ability to pay the amount needed by the mother to maintain the marital lifestyle, the judge must achieve a "fair balance of sacrifice" in ordering a lesser amount and explain her reasoning.  Young, 478 Mass. at 7, quoting Pierce, 455 Mass. at 296. 
            [11] We do no suggest that the percentages set forth in the act are themselves arbitrary; rather, the judge's selection of a percentage-based award here appeared arbitrary where it had no relation to the mother's need.  See Young, 478 Mass. at 9.  We note that the percentage range set forth in the act does not reflect a presumptively correct award like the child support guidelines.  See Child Support Guidelines, preamble (Oct. 2021).  Instead, the act's percentage range represents a ceiling that alimony should not exceed in most cases.  See Young, supra at 7.
            [12] The mother challenges this ultimate finding; however, we discern no abuse of discretion in the judge's determination of the mother's need as measured by the marital lifestyle, apart from the judge's exclusion of certain claimed expenses as discussed herein. 
            [13] Indeed, even at the time of the divorce when the marital home was presumably still in good repair, the mother's repair and maintenance expenses were more than zero ($25 per week), as the judge acknowledged. 
            [14] We reject the father's claim that there was no "support in the record" for the judge's finding that he earns bonus income of approximately $35,000 per year.  He asserts, without providing a record citation, that his first quarter bonus for 2023 was $7,765.84, thus the judge should have annualized that figure and found his 2023 bonus income to be $31,063.36.  However, he acknowledged that his total bonus income for the prior year (2022) was $34,207, as reported on his financial statement.  
            [15] At the time of the divorce, the mother was assigned (via a qualified domestic relations order [QDRO]) approximately twenty-two percent ($108,209.68) of the father's 401(k) account, which was then valued at $502,596.93.  At the time of the 2023 remand trial, the mother reported that the value of her QDRO share had increased to $172,804, representing approximately eighteen percent of the total 401(k) account balance of $940,457 reported by the father on his financial statement.  The prior year-end balance for the 401(k) account was $870,408.37, as shown on the father's 2022 account statement entered in evidence during the remand trial. 
            [16] We briefly address the father's other arguments pertaining to his investment income.  We are unpersuaded by his claim that consideration of his 401(k) investment income constituted inequitable "double-dipping" because his employer's contributions are counted "dollar for dollar" and again when the dividends and capital gains from those contributions are added to his income.  However, dividends and capital gains are profits distinguishable from the initial sum invested through employer contributions.  See Black's Law Dictionary 259, 601 (12th ed. 2024) ("capital gain" is "profit realized" from sale of capital asset; "dividend" is "portion of a company's earnings or profits" distributed to shareholders).  There is no double-dipping where, as here, it is possible to identify separately the value of a given asset and the income it produces.  See Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 528 n.5 (2016).  We decline to entertain the father's remaining contention that the judge was obligated to consider "the substantial [market] loss" sustained on his 401(k) account in 2022, because he has failed to provide any supporting legal authority for this argument.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). 
            [17] The judge's figure of $7,200 was close to the total figure of $7,123 presented by the mother in her proposed rationale.
            [18] We note that there were references in the transcript to line-item entries on the father's 2022 year-end paystub; however, that document was not included in the record appendix. 
            [19] The father also contends that the judge erroneously failed to consider his tuition obligation when ordering him to pay child support at the presumptive level.  He claims that his combined tuition and child support obligation is "far in excess of the presumptive child support guidelines," thus constituting a deviation.  Contrary to the father's assertion, the judge expressly considered his tuition obligation when determining the "most equitable" support order for the family.  Moreover, the guidelines do not require a parent's payment of private school tuition to be added to child support and treated as a deviation, and the father has not cited to any authority requiring such treatment.  See Child Support Guidelines § IV(B) (Oct. 2021) (payment of private school tuition not listed as ground for deviation); id. at § II(M) (authorizing judge to assign private school expenses to parent, with no mention of deviation or adjustment to child support).
            [20] Although the judge did not distinguish between prejudgment and postjudgment interest, the mother specifically requested prejudgment interest in her proposed rationale and her appellate arguments focus on prejudgment interest.  We thus have limited our discussion to the issue of prejudgment interest only.
            [21] "In all actions based on contractual obligations, upon a . . . judgment for pecuniary damages, interest shall be added by the clerk of the court . . . from the date of the breach or demand."  G. L. c. 231, § 6C.
            [22] The judge likewise determined that statutory prejudgment interest under G. L. c. 215, § 34A, was unavailable because the tuition reimbursement was ordered in the context of a modification action, rather than a contempt action.  See G. L. c. 215, § 34A ("Any monetary contempt judgment shall carry with it interest, from the date of filing the complaint").  Although the mother did file a complaint for contempt alleging that the father violated the divorce judgment by refusing to pay for the youngest child's seventh and eighth grade Williston tuition, the judge ultimately found the father not guilty of contempt, thus prejudgment interest under § 34A could not be assessed.  See Poras v. Pauling, 70 Mass. App. Ct. 535, 543-545 (2007) (prejudgment interest under § 34A available only when defendant found guilty of contempt).
            [23] Compare Mass. R. Civ. P. 54 (c), as amended, 463 Mass. 1401 (2012) (final judgment shall grant relief to which party is entitled even if not demanded in party's pleadings), and 54 (f), 382 Mass. 822 (1980) (prejudgment interest shall be computed by clerk according to law), with Mass. R. Dom. Rel. P. 54 (subsection [c] deleted as inapplicable to domestic relations practice, and no subsection [f]).
            [24] We do not consider the applicability of the statutory catchall provision set forth in G. L. c. 231, § 6H, because the mother has not argued that she is entitled to prejudgment interest under that section.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("appellate court need not pass upon questions or issues not argued in the brief").
            [25] Although a copy of the July 2020 contempt judgment was not in the record appendix, having exercised our discretion to obtain a copy of the judgment, see Cavanagh, 490 Mass. at 404, we conclude that it was indeed predicated on the same finding vacated by the Supreme Judicial Court.
            [26] We reject the father's claim that the mother's appeal from the order allowing his motion to strike and for sanctions is not properly before us because she was required to file an interlocutory appeal.  See Beit v. Probate & Family Court Dep't, 385 Mass. 854, 857-858 (1982) (order requiring attorney to pay monetary sanctions not appealable until final judgment entered).